AMOS CHAFFEE v. THE TELEPHONE & TELEGRAPH CON-
STRUCTION COMPANY.

*Electric wires — Obstructing firemen — Damages — Acquiescence—
Estoppel.*

A man cannot be permitted to erect a building upon his lot by the
side of telegraph and telephone poles and wires maintained in
a private alley, appurtenant to said lot, without any objection .
against their standing there, when they are on his own land,
and go on for years, without finding any fault whatever, and
allowing a tenant to use one of the wires for business purposes
in said building, and then, when a fire arises, and the wires
are found to hinder the firemen in their work of extinguish-
ing it, charge up to the corporation maintaining them the
loss occasioned by such fire.

Error to Wayne. (Reilly, J.) Argued June 5 and 6,
1889. Decided November 15, 1889.

Case. Plaintiff brings error. Affirmed. The facts are
stated in the opinion.

*Otto Kirchner,* for appellant, contended:

1. The act of the defendant in planting the poles and stretching
and maintaining wires over them through the alley in the rear
of plaintiff's premises, was the proximate cause of the destruc-
tion of his building. There is no occasion for refinements or
an analysis of cases bearing upon the question of proximate
and remote cause. The building would have been saved had
the defendant desisted from the wrong complained of. It is a
begging of the question to say that the fire was the immediate
cause of the destruction of the building. The fire alone did
not and could, not have destroyed the building. It was the
presence of the wires that made the fire a destructive agency;
citing *Casting Co. v. Railroad Co.,* 109 Mass. 277; *Ins. Co. v.
Tweed,* 7 Wall. 52; Field, Dam. § 50; Sutherland, Dam. 48, 62;
*Brooklyn v. Railroad Co.,* 57 Barb. 497; *Atkinson v. Water
Works Co.,* 6 Exch. L. R. 404; *Scott v. Hunter,* 46 Penn. St.

77 MICH.—40.

192; *Allegheny v. Campbell*, 107 Id. 530; *Dickinson v. Boyle*, 17 Pick. 78; *McAfee v. Crofford*, 13 How. 447.

2. The claim that the wires were in the alley by our consent is utterly baseless. In *Reid v. Atlanta*, 73 Georgia, 523, it was held not to be a defense to an action for discharging sewerage on plaintiff's land that defendant began to do it more than four years before; and in *Pettis v. Johnson*, 56 Ind. 139, the court held that it was no defense to an action for a nuisance that it had continued for eighteen years; and see *Gray v. Gas Light Co.*, 114 Mass. 149; *Railroad Co. v. State*, 20 Md. 157.

*William H. Wells (Ashley Pond,* of counsel), for defendant, contended:

1. The wires were not the proximate cause of the loss. The fire was the first cause. In its origin it had no connection with the wires. The fire alone was adequate to cause the loss. The wires alone were inadequate. It was after the fire was started and the loss was initiated, and to some extent was inevitable, that the factor of the wires appeared in the problem. They did not originate the loss, but interfered, it is claimed, with arresting it. One is under obligation to do no act which will frustrate means which are in use to extinguish a fire. But one is not responsible for the existence of an independent condition of things, if it prove an unintentional interference with means which might be used to extinguish a fire. In the former case, the act would be the direct cause of the loss; in the latter, the remote; citing *Casting Co. v. Railroad Co.*, 109 Mass. 277, as an example of the first rule, and *Bosch v. Railroad Co.*, 44 Iowa, 402, as an example of the absence of liability. See, also, *Mott v. Railroad Co.*, 1 Robt. 585, 593; *Sharp v. Powell*, L. R. 7 C. P. 253; *Railway Co. v. Ware*, 67 Tex. 635; *Lewis v. Railway Co.*, 54 Mich. 55, where the various cases of remote causation are reviewed.

MORSE, J.   Plaintiff was the owner of lot 73 in section 2 of the Governor and Judges' plan in the city of Detroit, and of a valuable brick building thereon that yielded a monthly rent of $250. It was situated on the south side of Larned street west, in the block bounded by Larned street and Jefferson avenue on the north and south, and by Griswold and Shelby streets on the east and west, respectively.

The block was intersected by an alley 20 feet wide, running between Jefferson avenue and Larned street, from Griswold street westerly to Shelby street. The defendant put up and maintained 60 wires, stretched on cross-arms, each 6 feet long, attached to poles planted in the ground (8 to each pole), through said alley, in the rear of plaintiff's building. There were also 12 telegraph wires stretched through said alley by another company.

On March 2, 1888, a fire broke out in the building, and everything burned, except the walls. Some of the brick walls were not damaged so as to require to be taken down, but a part of them were. It is claimed that these wires prevented the fire department from extinguishing the fire. Mr. Tryon, the secretary of the fire department, testified, as did Mr. Elliott, the assistant chief engineer, that on account of these wires it was impossible for the firemen to raise the ladders, which were on trucks. Mr. Tryon, some time before the fire, notified Mr. Phillips, the manager of the defendant company, that these wires in the alley would prevent the fire department from raising its ladders in the event of a fire. Mr. Phillips replied that this was undoubtedly correct, but that the defendant company were preparing to get their wires under ground, and that they would strip that alley as soon as possible,—probably the first thing they did. When the firemen first reached the premises the fire was in the third story. Evidence was given on behalf of the plaintiff tending to show that if it had not been for these wires the first and second stories of the building could have been saved intact, except the damage from the water thrown on the fire.

The plaintiff sues in trespass on the case, claiming damages, and contends—

1. That the alley was a private way appurtenant to his lot and building.

2. That the erection of the wires by defendant in the alley was a trespass, and their maintenance a nuisance, every continuance of which was a new nuisance.

3. That, in contemplation of law, defendant, by its wires, was at the fire, and by force and arms prevented its extinction, and in so doing was the direct and immediate cause of the destruction of plaintiff's building.

The defendant claims—

1. That the defendant was not unlawfully maintaining the wires in the alley.

2. The act complained of was not the proximate cause of the loss.

3. The damages sought to be shown by the plaintiff's testimony are vague and speculative.

The first contention of the defendant is based upon the long acquiescence of the plaintiff in the maintenance of the wires in the alley.

The circuit judge before whom the case was tried, Hon. Cornelius J. Reilly, of the Wayne circuit court, at the close of the testimony directed a verdict for the defendant.

In the view that I take of the case, it is not necessary to discuss much of the evidence, or any point in the case save the first plea of the defendant. The evidence is uncontradicted that the building was erected five years before the trial of the suit. Before the erection of the burned building the lot was occupied by a dwelling-house, which had been there a great many years. The plaintiff testifies that the wires were placed there—

"A good while ago, and were there when the brick building, which was burned, was erected."

· He knew the poles were there, and what the wires were used for

"I asked no questions about it. From the time I first knew the wires were there, I understood what they were for."

He never asked the defendant to remove them, ·nor protested against their maintenance in the alley, nor in any way manifested any dissent to the action of the defendant in keeping and using them there. He testifies that one of his tenants used a telephone in his building, and says:

"I never objected, or found fault with the defendant company for maintaining their wires in the alley."

I can see no legal or equitable reason why the plaintiff, tacitly assenting to the maintenance of the wires in this alley, by allowing his tenant to use a telephone connected therewith, and by permitting them to remain there without the least objection, should be allowed, after this fire, to place the damage, or any part of it, upon the defendant, nor can I find any law to sustain his action. It is contended by the counsel for plaintiff that the maintenance of the wires in the alley was a nuisance, and a continuing one from day to day, each continuance being a new nuisance; that the defendant was liable to the plaintiff in an action at law for the obstruction of the alley every day, up to and including the day of the fire; and that therefore the acquiescence of the plaintiff for one or more days cannot be used to infer an implied license for its continuance another day. The following cases are cited to support this contention: *Reid v. City of Atlanta*, 73 Ga. 523; *Gray v. Gas Light Co.*, 114 Mass. 149; *Railroad Co. v. State*, 20 Md. 157; *Pettis v. Johnson*, 56 Ind. 139.

These cases do not meet the question presented here. Failure to protest against a nuisance for a long space of time will not prevent an action to abate it, upon the principle that each day of its continuance is a new nuisance; and many courts hold that the right to maintain a nuisance can never be gained by prescription. But I

can find no authority anywhere, and I should doubt its being good law if I did find it, that will permit a man to build by the side of these telegraph and telephone poles and wires, without any protest or demur whatsoever against their standing there, when they are on his own land, and go on for years, without finding any fault whatever, and allowing a tenant to use one of the wires for business purposes in his building, and then, when a fire arises, and the poles are found to hinder the firemen in their work of extinguishing it, charge up to the corporation maintaining these poles the loss occasioned by such fire. To do this would be to violate one of the plainest principles of justice; and the law, in my opinion, will not permit it. I do not doubt the right of Mr. Chaffee to have moved at any moment to abate this nuisance, but while he acquiesced in it, and virtually was using it, or deriving some benefit from it, through a tenant in his building, he cannot be permitted to recover damages because of its maintenance upon his premises.

If there can be any assent which is not shown by express words, the plaintiff assented to the continuance of these poles upon his premises, and such assent was not a question for the jury. It was shown without dispute by his own testimony. There was clearly, to my mind, an implied assent that the poles might remain there, and no hint anywhere, not even in his testimony on the trial, that he ever considered them a nuisance until they were demonstrated to be so by the fire. Until something was done by Chaffee to notify the defendant that he found some fault with the maintenance of these poles in the alley, he could not recover damages for their being there.

The judgment was right, and must be affirmed.

SHERWOOD, C. J., CHAMPLIN and LONG, JJ., concurred with MORSE, J.

CAMPBELL, J., *(dissenting)*.   Whatever may be its effect as a circumstance on the question of damages, I think there can be no doubt of the right of any land-owner to sue for some damages for any encroachment on his property rights.   Delay in complaining may sometimes cut off a right to sue in equity, but nothing short of statutory limitations can bar a suit at law.   And where a wrongful entry or intrusion is made without license or permission, no license can be legally determined from inaction.

There is some difficulty in ascertaining the precise effect of the wires in connection with the fire.   But such difficulty is no defense to an action, and a wrong-doer, and not the injured party, must bear this difficulty.   Whether the danger of interference with putting out fires is a natural one, to which damage may be attached, is at least a question for the jury.   That serious damage and fatal casualties have arisen from the placing of numerous wires near high buildings is a matter of common knowledge, and there can be no doubt it is a wrong unless consented to. It is not in the power of a city to license any one to damage or encroach on the property of individuals, and no justification can be based on it.

I do not think it can be held, as matter of law, that Mr. Chaffee is estopped from complaining of the action of the defendant, or from recovering some damages.   Nor do I think we can prevent a jury from considering the amount of damages, under proper instructions as to the law; the facts not being subject to judicial determination. I think there should be a new trial.