## LAMKA v. CITY of EL RENO.

No. 14523—Opinion Filed Oct. 14. 1924.

On Rehearing July 7, 1925.

### 1. Nuisance—Person Laible.

The person primarily liable for a nuisance is he who actually creates it. 29 Cyc. 1201.

### 2. Municipal Corporations — Pollution of Stream by Sewage — Nonliability to Landowner at Fault.

The owner of land, adjacent to the bend in a river into which a city discharges its sewage, who changes the course of the river, by a cut-off. diverting the flow of the waters from the bend, causing a nuisance for lack of sufficient water to carry off the sewage, cannot recover damages against the city for such nuisance.

### 3. Same—Implied Easement of City—Rights of Landowner's Grantee.

The owner of land, adjacent to a bend in the river, who changes the course of the

stream, by a cut-off, diverting the waters from the bend through which a city discharges its sewage, thereby impliedly grants an easement for the flow of the sewage through the bend to the living stream, and the same being obvious, his grantees take title subject to the easement, and are precluded from recovering damages therefor.

(Syllabus by Treadgill, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Canadian County; J. I. Phelps, Judge.

Action by E. W. Lamka against the City of El Reno, for damages on account of nuisance. Judgment for defendant, and plaintiff appeals. Affirmed.

Ledbetter, Stewart, Bell & Ledbetter and A. C. Morrison, for plaintiff in error.

J. N. Robertson and Babcock & Trevathan, for defendant in error.

Opinion by THREADGILL, C. The appeal is brought by the plaintiff in error, plaintiff below, from the judgment of the district court of Canadian county in favor of the defendant in error, defendant below, in an action by plaintiff for damages on account of a sewer, discharged from the city onto or in proximity to plaintiff's land, amounting to a nuisance.

The facts as disclosed by the record are substantially as follows:

The plaintiff was the owner of a tract of land consisting of about 120 acres, situated in what was once a horse shoe bend of the North Canadian river, just north of the city of El Reno. This bend in the river runs completely around the tract of land coming south near the city and bending to the east a short distance and turning back north about one-half mile and then turns east, and where it turns east is only a short distance across to the west to the channel of the river coming south in the bend toward the city. The bend was like a horse shoe opening to the north.

Plaintiff bought this land from a man by the same of Simpkins, in February, 1920. Simpkins bought the land from McIlwain and McIlwain, bought the land from R. J. Sheldon, the original owner. While Sheldon was owner of the land it was considered overflow land, and to remedy this condition Sheldon and two other landowners owning land on the river constructed a channel between the points of the horse shoe bend across the north side of Sheldon's land straightening the channel of the river and conducting the water away from this bend and carrying it across the short way into the main channel of the river

turning off to the southeast. Prior to this time the city of El Reno had a sewer system which emptied into the Canadian river at the south end of this horse shoe bend, which was next to the city, and the river coming around the bend carried the sewage away and down the river.

When the channel was changed, as above stated, it left the old channel around the bend to go dry except for the sewage from the city, and, for a time, this sewage ran away freely to the river channel as changed, but from time to time where the old river bed joined onto the living stream at the north and east side of the new channel, filled up by the back wash and sand and dirt, leaving very much of the sewage in the old channel, and this continued for several years, and the water backed up part of the way on the west side of the horse shoe bend and within a short distance from where the plaintiff and his family resided. The change of the channel improved the overflow conditions, but caused a stagnant condition of the sewage from the city in the horse shoe bend, and this sewage emptying into and standing in the old river bed tainted the atmosphere with noxious and offensive odors which were disagreeable and unhealthful for the plaintiff and his family and his dwelling place unfit for habitation; and was in fact a nuisance.

During the year 1920, on recommendation of the state board of health, a sewage disposal plant was constructed by the city of El Reno some distance back from the mouth of the sewer, which sewage disposal plant takes the sewage from the city, extracts from it all solid matter and discharges the water into the main sewer line, which emptied into the old river bed as before. This did not relieve the foul situation, because the sewage as cleansed by the disposing plant was not sufficient to cleanse and carry off the solid matter that had been deposited in the old river bed, and held there by the back wash of sand and dirt where the new channel cut across the old channel at the north, and so the nuisance continued.

Complaint was made to the city and the officials cut a ditch along the old channel on the east side going north for the discharge from the disposal plant to run away to the new channel of the river, a distance of about one-half mile, and, for a time, the water ran in this ditch and the foul water backed up in the old channel dried up entirely. It could be crossed at a few places, but the city did not feel able to keep a man on guard at this ditch all

the time to keep it open, and the hogs, in the neighborhood, owned by the landowners or tenants, got into the ditch and rooted down its walls, and again the water poured out of the ditch into this old river bed, and prevented the stagnant water from drying up; and the plaintiff did not assist in any way to keep the hogs out of the ditch. A fence could have been placed on each side of this ditch and protected it from cattle and hogs, and the water from the sewer would have continued its course to the river channel at the north, and the stagnant water would have dried up.

The plaintiff claimed that the value of his land was damaged by reason of the nuisance, and he charged that the city created the nuisance, and was liable to him for damages, and brought this suit against the city for the same.

There was a great deal of testimony as to the bad conditions on account of the stagnant water, and the value of the land, and the case was tried to a jury and resulted in a verdict in favor of the defendant, and the plaintiff appeals, alleging various assignments of error, but urging only instructions of the court. The plaintiff requested four instructions, which were refused by the court, and which were as follows:

"1. If you find from the evidence that the condition in the abandoned river bed could be corrected by the reasonable expenditure of money and labor after the plaintiff bought the land in controversy and that defendant has failed to make said corrections and that on that account the market value of the land in controversy has been injuriously affected or his reasonable use of the land has been interfered with on account of the odors, if any, resulting from said failure, if any, you will find for the plaintiff, notwithstanding he bought the land after the objectionable condition has been erected.

"2. If you find that the defendant since plaintiff bought the land has abated the objectionable condition or relieved the same to some extent then you are charged that if the defendant has resumed and renewed the practice then plaintiff will be entitled to recover for what damage that has been occasioned to the land by reason of said renewal.

"3. The court instructs the jury that the defendant would have no authority to increase the volume of sewage which entered into the old river bed after the plaintiff bought the land and if you find from the evidence that after plaintiff bought said land the defendant turned additional sewage and that plaintiff was damaged thereby

you will find for the plaintiff, if you find he was damaged thereby.

"4. If the defendant caused the contents of its sewer to be emptied into the old river bed around the farm of plaintiff and the market value of his farm has thereby been decreased, you will find for plaintiff and assess his damage to the farm at the difference between the market value thereof if it was free from said sewage and the present market value."

1. Plaintiff contends that the facts in the case showed the nuisance to be one affecting the public in general and the plaintiff in particular, and that the defendant had no right to taint the waters of a stream to the damage of landowners, citing many authorities to support his contention, and especially Oklahoma cases as follows: Colbert v. City of Ardmore, 31 Okla. 537, 123 Pac. 508; City of Chickasha v. Looney, 36 Okla. 155, 128 Pac. 136; City of Cushing v. High, 73 Okla. 151, 175 Pac. 229; City of Cushing v. Luke, 82 Okla. 189, 199 Pac. 578.

Plaintiff's contention and authorities cited are based upon the theory that the city created and maintained a nuisance, but plaintiff does not contend for a nuisance by reason of sewage being emptied into the living stream, but into the bend of the river from which the waters had been diverted. This is shown by plaintiff's statement in his brief to the effect that the nuisance could have been abated by extending the sewage around through this abandoned river bed to the present bed of the North Canadian river. This being plaintiff's contention and the foundation of his argument and authorities, there is just one question in this appeal, and that is, Who is liable for the nuisance? The undisputed evidence in the case shows that at the time the defendant constructed its sewerage system and conducted the sewage into this bend of the river the natural flow of the water came down from the north and around the bend where the sewage flowed into it and up one-half mile north, and then turning away to the southeast; and since that time the plaintiff's grantor, with other landowners, diverted the flow of the water from this horse shoe bend by a channel constructed on the north side of the plaintiff's land and without the consent or assistance of the city, and for the purpose of saving the lands from overflows, and the nuisance resulted from this diversion of the water from the horse shoe bend channel. If the waters had continued to flow around this bend there would be no complaint of the nuisance.

Plaintiff contends that the defendant should have conducted the sewage through a pipe or channel to the living water stream, which would have burdened the defendant with a great expense. We do not think this is the requirement of the law. It is clear that the plaintiff knew at the time he purchased the land from Simpkins that the river channel had been changed, and he could have known whether or not the city had anything to do with making the change, and he could have known whether or not his immediate grantor or any of the grantors in the chain of his title had anything to do with this change. The change was made about the year of 1912, and in order to abate the nuisance it was only necessary, at any time, to close the cut off at the north and send the waters of the river channel around the bend, and, under these circumstances, we cannot see how the city could be charged with creating or maintaining the nuisance complained of. The general rule laid down by 29 Cyc. 1201, is as follows:

"The person primarily liable for a nuisance is he who actually creates it."

And in 20 R. C. L. 362 we have this rule:

"The grantee of land upon which there is a nuisance is liable therefor, if he continues it with knowledge of the nuisance."

And again in 29 Cyc. 1202-1203, we have this rule:

"Where the owner or person in possession of land continues a nuisance originated by his predecessors in title or possession, he is liable therefor."

The evidence discloses that the plaintiff's land was greatly benefited and inhanced in value by being relieved from the overflows in the change of the channel and straightening the river by the cut-off, and plaintiff in buying this land obtained the benefits from this change; and where the benefits are received and accepted by one in the approval of the acts of another and a nuisance is created by the acts that also produce the benefits, he will not be heard to complain and claim damages for such nuisance 20 Cyc. 1259; 20 R. C. L. 495; 20 R. C. L. 492; Bellamy v. City of Hamilton, 4 Upper. Can. Com. Pleas, 526, and Richards v. City of Waupun (Wis.) 17 N. W. 975; Shahan v. Ala. Great So. Ry. Co., 115 Ala. 181; Chaffee v. Telephone Company (Mich.) 43 N. W. 1064, 6 L. R. A. 455.

2. There is another good reason why the defendant is not liable for the nuisance complained of, and that is that plaintiff's grantor in changing the course of the river by the cut-off took away from the defendant the flow of the waters to carry its sewage down the stream, and an easement for the flow of the sewage in the old channel was implied. 9 R. C. L., page 785, section 43.

Defendant's right to the river for the purpose of its sewerage system is conceded, as there is no complaint that the sewage was a nuisance emptying into the flowing river, and when plaintiff's grantor changed the flow of the river further down than where defendant had access to the flow, an easement was given for the flow of the sewage in the same channel where it had been flowing, and, although this channel was one-half mile long before it reached the river, as changed, defendant used it for about 10 years by the consent of and without complaint on the part of plaintiff's grantor, and, the easement being obvious, the grantee could not complain against either party to the grant.

In 29 Cyc. 1260, the rule is stated as follows:

"A person is not precluded from recovering damages for a nuisance injuring his property by the fact that his grantor brought no action for it and made no complaint against it; but if the owner of property has charged it with servitude as to the matter complained of, a subsequent grantee cannot recover damages therefor." 9 R. C. L. page 805, section 61.

In the case of Troy v. Coleman, 58 Ala. 570, the Supreme Court of Alabama in passing on a case very similar to the one at bar uses the following language:

"Appellant proposed to prove that one of the sewers complained of by plaintiff was put there at the request of Joel D. Murphree, who owned said lot at that time, that is, the lot now belonging to plaintiff, to which damage was done. But the circuit judge ruled that this could not be done. It seems to us that in this there was error. If the former owner, who had power to charge the lot with any servitude in favor of the public, expressly authorized the building of one of the structures complained of, in such a situation and manner that it would naturally turn upon the lot a larger portion of the water which they desired to divert from the street, he thereby deprived himself of any right of action against the corporation for that which he, with knowledge of the consequences to his property, induced the authorities to do. And he would not, by a transfer of the lot to another, invest his alienee with larger rights than he himself had. The purchaser would take the property cum onere. As for this error, the judgment will have to be reversed." Union Springs v. Jones, 58 Ala. 654.

When this case was assigned to the writer of this opinion and submitted for con-

sideration, defendant was in default of brief and the case was decided on the brief and authorities of plaintiff, and after the opinion was prepared by the Commissioners, defendant obtained leave to file its brief out of time, and the opinion prepared withdrawn, and upon full consideration of the entire record and the briefs of both parties we are forced to change our ruling in the first opinion, and taking the view of the case as above expressed, we think the instructions requested by the plaintiff were erroneous under the facts of the case and those given by the court were correct, and we are of the opinion that judgment of the court should be affirmed.

By the Court: It is so ordered.

## On Rehearing.

Opinion by THOMPSON, C. The original opinion was handed down by this court on the 14th day of October, 1924. A petition for rehearing was filed on the 8th day of November, 1924, by the plaintiff in error and rehearing was granted by this court on the 25th day of November, 1924. Thereafter, on the 8th day of December, 1924, the defendant in error filed its response to the petition for rehearing filed by plaintiff in error, and on December 16, 1924, the plaintiff in error filed his answer to the response of defendant in error, and the cause comes now on regular assignment for an opinion on rehearing. The main questions presented on rehearing are that the original opinion is based upon an erroneous assumption; that R. J. Sheldon, through whom plaintiff in error acquired title through mesne conveyances, created the nuisance, and that this finding of the court is not supported by the evidence, and that the conclusion of the court, in its original opinion, is contrary to the statute laws of the state of Oklahoma, providing for general drainage districts, and that a presumption existed that the ditch whereby the natural course of the North Canadian river was changed was dug by the county under said statutes, and that the original owner of the land was not responsible therefor. The sole and only proof in this case upon this proposition is the testimony of J. B. Poole, an adjacent landowner, which was corroborated by J. H. Palmer, who testified that R. J. Sheldon, the then owner of the land, through whom the plaintiff in error claims title, R. L. Cliff and R. F. Foster diverted the natural channel of the river by a ditch constructed by them, which ditch was located entirely on and across the land of R. J. Sheldon, and that at that time the sewage from the city of El Reno was being discharged into the live flowing waters of the river, and there is no complaint that there was any damage being done to anybody by such discharge until after the channel of the stream had been changed by the acts of Sheldon and the other parties, named above, and that after the channel had been changed across the opening of the horseshoe bend, as described by the witnesses, it left practically a dry bed where the stream originally flowed at the point where the sewage was discharged from the city of El Reno, and that R. J. Sheldon, the then owner of the tract of land, claimed in this action to have been affected by such discharge of sewage, was foreman of the outfit that changed this channel, and that he helped to pay the expenses of the construction of the ditch, which changed the channel, as stated above; that said change was made for the purpose of preventing overflow of the very lands which the plaintiff in error claims were injured by the discharge of the sewage, which change was made for his benefit and profit; that the city of El Reno had nothing to do with, and its consent was not given or obtained for, the change of the natural course of the river, which carried off the sewage from said city, and while the answer of the city in this case put in direct issue the fact that said ditch was dug and said change in the natural course of the river was made by the grantor of plaintiff in error, and that the plaintiff in error knew at the time he purchased the land that this sewage had collected in the old river bed and was in that condition at the time it was purchased, yet there is not one single scintilla of proof offered in contradiction of the testimony introduced that R. J. Sheldon, the then owner of the land, caused the natural course of the stream to be diverted, or that the county commissioners had any knowledge whatever that the course of the stream had been changed at this point or that it participated in any manner in having said change made or paid any of the expenses therefor. If the change were made under authority of the board of county commissioners, then there must have been some record in the office of the county clerk of the proceedings of the board of county commissioners, which could have been obtained by plaintiff in error and introduced in this case in contradiction of the positive testimony introduced on the part of the defendant in error by two witnesses, that the change was made by R. J. Sheldon and his adjacent landowners for their own individual profit and benefit, and it is fair to assume that no such record or

evidence existed, or the plaintiff in error would have introduced it in rebuttal of the testimony of the defendant in error.

The jury returned its verdict against the plaintiff in error in this case, which settled all the questions of evidence above set forth, as an affirmative fact that Sheldon, the grantor of plaintiff in error, did construct the ditch, and that he and his adjacent landowners, who participated therein, were responsible for the condition complained of, and the verdict of the jury in a law action, as this is, where there is sufficient evidence to sustain the verdict, will not be disturbed by this court on appeal.

We are clearly of the opinion that, under the facts and circumstances of this case and under the law as set forth in the citation of authorities in the original opinion, the city of El Reno cannot be held responsible in damages in this case, where the injury or damage was brought about without its knowledge or consent by the owner of the land affected, or those claiming by, through, or under him, and, as in this case, where the city of El Reno, against whom the damage is claimed, has done all in its power by cutting a ditch through the old channel to the river to carry off the sewage, and the adjacent landowners have allowed their stock to cause said ditch to be filled up and the city has constructed a septic tank to take care of the solid matter in said sewage, and the plaintiff in error and the adjacent landowners have done nothing to relieve the condition brought about by their own acts, we are of the opinion that the verdict of the jury was correct in this case and that the plaintiff in error was not entitled to recover any damages claimed by him in this action.

We are, therefore, of the opinion that the original opinion in this case should be adhered to, and that the judgment of the lower court should be and is hereby affirmed.

By the Court: It is so ordered.