## COLBERT v. CITY OF ARDMORE.

### No. 1532. Opinion Filed March 12, 1912.

#### (122 Pac. 508.)

1.   **NUISANCE—Action for Damages—Pleading.** Where the petition states facts sufficient to constitute a cause of action against defendant, in damages, for the maintenance of a public nuisance, **held,** that it was not material that plaintiff did not demand the precise relief to which he was entitled, or that he mistook the true rule of damages; that he was entitled to whatever legal damages were recoverable for the wrong.

2.   **MUNICIPAL CORPORATIONS—Pollution of Stream—Liability of City in Damages.** Where a municipal corporation discharged sewage in a creek, polluting the waters of the stream, and causing it to become foul and impregnated with noxious and poisonous substances which are offensive to the smell and a menace to the health of persons living or working in that vicinity, rendering it impossible for plaintiff and his tenants to cultivate his adjacent land, and rendering the same less valuable, thereby creating and maintaining a nuisance, such corporation is liable in damages for the maintenance of such nuisance.

(Syllabus by the Court.)

*Error from District Court, Carter County;*
*S. H. Russell, Judge.*

Action by Walter Colbert against the City of Ardmore. Judgment for defendant, and plaintiff brings error. Reversed.

*Harreld & Ward,* for plaintiff in error.

*J. B. Moore,* for defendant in error.

TURNER, C. J. On July 31, 1909, Walter Colbert, plaintiff in error, sued the city of Ardmore, defendant in error, in the district court of Carter county. His petition, after substantially stating that defendant is a city of the first class, that he is a

citizen of Carter county and the owner of a certain tract of land (describing it) lying adjacent to the city, and along the west side thereof, further alleges that along the west side of said city, and near said lands, flows a stream, known as one branch of Hickory creek;

" * * * that during the years 1907 and 1908, the defendant, in the construction of a sewerage system and extension of a sewerage system already existing in said city, did, by means of ditches and tiling, build and construct a drain pipe leading into said stream from the said city of Ardmore, thereby gathering together and conducting through said drain pipe and into said flowing stream immense quantities of refuse, filth, dirt, and offensive sewage from the said city of Ardmore, all of which is dumped or thrown into said stream at a point in close proximity to the above-described lands of this plaintiff, all of which was done by the said defendant and its officers and agents wrongfully, wantonly, and in utter disregard of the rights of this plaintiff; that, as a result of the emptying of the said sewage, as aforesaid, there has collected at the point where same empties large quantities of material which is offensive to the smell and a menace to the health of persons living or working in that vicinity; that said offensive odors from said pile of sewage, as above set out, permeate and spread over the entire area of the lands described in such a way as to render it impossible for this plaintiff and his tenants to cultivate said land without subjecting them to great annoyance and greatly menacing the health of each; that there is located on said lands a house, used by the tenants of this plaintiff; that said house has, by reason of said offensive odors and the unhealthfulness thereof, been rendered uninhabitable, and his said tenants have been compelled to and have removed from said premises, thereby destroying the rental value of said premises; that the said stream is not of sufficient size and is so stagnant that it does not carry away the said sewage, or any part thereof; that said land, described above, is a part of the homestead of this plaintiff, which lands he has been occupying and using as a homestead for many years; that his enjoyment of same as a homestead has been greatly diminished and interfered with by the wrongful acts of the defendant in emptying said sewage, as above set out; that he is in the habit of renting a large part of said land, and the rental value thereof has been greatly depreciated by the said wrongful acts of the defendant; that it is impossible, under present conditions, for him to get desirable tenants to cultivate said

land by reason of the wrongful acts of the defendant, as above set out; that the reasonable value of said land, prior to the acts complained of, was $100 per acre, or $16,000; that the reasonable value of said land now and since the construction of said sewerage, as above set out, is $8,000, and this plaintiff has been damaged by the wrongful acts set out above in the sum of $8,000"

—for which he prayed judgment and for general relief. To this petition, after the court had sustained the general demurrer thereto and plaintiff had refused to plead further, there was judgment rendered and entered for defendant, and plaintiff brings the case here.

In support of its demurrer, the city contended that, had plaintiff relied upon the allegations of the petition down to a certain point and stopped, he might have stated a cause of action, but when he added:

"That the reasonable value of said land, prior to the act complained of, was $100 per acre, or $16,000; that the reasonable value of said land now, and since the construction of said sewerage, as above set out, is $8,000, and this plaintiff has been damaged by the wrongful acts set out above in the same of $8,000"

—and prayed damages for that amount, the petition failed to state a cause of action. This for the reason that, taken as a whole, the petition claimed damages properly recoverable for a permanent injury upon a statement of facts, in effect, that the injury was not so. In other words, if we understand its point, that the pleader was mistaken in the precise damages to which he was entitled. This was not ground of demurrer. 5 Enc. Pleading & Practice, p. 708, says:

"And so it is immaterial that the plaintiff does not demand the precise damages to which he is entitled, or that he mistook the true rule of damages in his complaint, where the complaint avers a legal wrong and the resulting pecuniary injury; and it is competent for the court, under the complaint, to adjust the recovery on the true basis."

*Colrick v. Swineburne*, 105 N. Y. 503, 12 N. E. 427, was a suit in damages for the diversion of the water of a spring from its natural channel, whereby plaintiff's intestate was deprived of its use for his tannery. The alleged vice in the pleading there

was as here. To that point, the court said:

"The complaint was sufficiently specific to authorize the recovery of whatever legal damages were recoverable for the wrong. The gravamen of the action was the wrongful diversion, whereby the plaintiff was deprived of the use of the water on his premises for the purposes of his business. It is not material that the plaintiff did not demand the precise damages to which he was entitled, or that he mistook the true rule of damages in his complaint. The complaint averred a legal wrong and a resulting pecuniary injury; and it was competent for the court, under the complaint, to adjust the recovery upon the true basis."

See, also, *Bank of British Columbia of Victoria, Appellant, v. City of Port Townsend, Respondent,* 16 Wash. 450, 47 Pac. 896; *Weaver v. Mississippi, etc., Co.,* 28 Minn. 542, 11 N. W. 113.

The petition stated a cause of action. No substantial difference exists between said petition and the petition in *Markwardt v. City of Guthrie,* 18 Okla. 32, 90 Pac. 26, 9 L. R. A. (N. S.) 1150, 11 Ann. Cas. 581, to which a demurrer was overruled. Quoting with approval from Gould on Waters (section 220), the court said:

"A city has no right to discharge sewage in a stream, so as to affect owners lower down on the stream. The right to deposit a thing in any place must always be dependent, not only on the nature of the thing deposited, but on the nature of the place in question, and the uses to which it has already been put; and, if the stream was, from any cause, in such a condition that the defendant's discharge of sewage there worked a nuisance, it has no right to use the stream for such purposes.' And, again, the same author, in section 545, says: 'The pollution of streams by municipalities and public bodies in charge of sewage and drainage has occasioned frequent exercise of the preventive powers of equity. Upon principle, a public body has no more right at common law than a private person. Its duty to prevent public nuisance by taking care of the sewage or drainage of the district gives it no right to create another nuisance by the pollution of a stream.' "

And in the syllabus said:

"Where a municipal corporation discharges sewage into a river or creek, polluting the water of the stream, causing it to become foul and impregnated with noxious and poisonous substances, rendering it unfit for domestic and other uses, and there-

by creating and maintaining a nuisance, which is detrimental to the health, comfort, and repose of a lower·riparian proprietor, and diminishes the value of his land, such municipal corporation is liable for damages arising from the maintenance of such nuisance."

The doctrine there laid down is too familiar to require further citation.

The judgment of the trial court is reversed.

All the Justices concur.