## BIXBY v. CRAVENS *et al.*

No. 6721.    Opinion Filed April 5, 1916.

(156 Pac. 1184.)

1.    **NUISANCE—Private "Nuisance"—What Constitutes.** Though every one has the right to the reasonable use and enjoyment of his own property, he may not so use it as to unreasonably deprive an adjacent owner of the lawful use and enjoyment of his property, and one using his property in an unwarrantable manner, and thereby injuring the comfort, health, and safety of another, creates a "nuisance" which may be abated at the suit of the person so injured.

2.    **SAME.** Such injury must not be fanciful or imaginary, nor such as to result in a trifling annoyance, inconvenience, or discomfort, which may affect those who possess too sensitive a nature or too fastidious a taste. The law is applied only to the normal man—the man of ordinary habits and ordinary sensibilities.

3.    **ADJOINING LANDOWNERS—Fences—Nuisances.** Under the evidence set out in the record, the fence complained of having been erected in the exercise of a lawful right to make the owner's property more comfortable and usable and not out of spite or ill will toward the adjoining proprietor, although he may have been annoyed thereby, did not constitute a nuisance, and the law does not authorize its abatement.

(Syllabus by Galbraith, C.)

*Error from District Court, Muskogee County;*
*R. P. de Graffenried, Judge.*

Action by Tams Bixby against R. R. Cravens and others. Judgment for defendants, and plaintiff brings error. Affirmed.

*De Roos Bailey, J. E. Wyand,* and *Charles A. Moon,* for plaintiff in error.

*S. M. Rutherford* and *James W. Cosgrove,* for defendants in error.

Opinion by GALBRAITH, C. Tams Bixby, as complainant, commenced this action in the trial court against the defendants in error for an injunction to prevent them from maintaining, and requiring them to remove, a fence erected along the north boundary of their property next to his. Cravens filed a disclaimer, and the Lesters joined issue. There was a trial to the court, and the injunction was denied. From an order overruling a motion for new trial an appeal has been duly prosecuted to this court. The parties were neighbors, and owned and lived on adjoining property near the end of Fourteenth street, between the streets of Emporia and Fon Du Lac, in the city of Muskogee.

The plaintiff's cause of action as set out in his amended petition, upon which the trial was had, was as follows:

"That he is, and has been for a number of years, the owner of lot numbered 17 in subdivision of lot 1 in block 226, according to the plat filed for record in June, 1906, in the city of Muskogee, Muskogee county, State of Oklahoma, which has a frontage of 265 feet, and that he has a residence on said lot facing in a south direction, the south side of said residence being 26 feet north of the

south line of said lot, and that he now occupies with his family, and has for a number of years last past, the above-described property as a home.

"That the defendants Richard A. Lester and Nell Lester, his wife, own lots numbered 15 and 16 in the said subdivision of lot numbered 1 in block 226, according to the plat filed for record in June, 1906, in said city of Muskogee, that there is a residence thereon, and that the defendants Richard A. Lester and Nell Lester reside with their family thereon, and have for a number of years last past, which said lots lie south of the west 110½ feet owned and occupied by the plaintiff, there being about an 8-foot alley between the said lots of plaintiff and defendants.

"That on or about the 15th day of May, 1913, the said defendants Richard A. Lester and May Lester maliciously, spitefully, and for the purpose of annoying the plaintiff and his family, erected a plank fence along the entire northerly line of their said lot and the southerly line of the alley between the said lots of plaintiff and defendants, six feet high; that said fence was not erected for any useful or necessary purpose on the part of defendant, but purely for the purpose of annoying plaintiff and his family; that said plaintiff has a beautiful home, and said fence presents an unsightly appearance on the side facing said home; that said fence cuts off plaintiff's view, and also cuts off the air and light from the plaintiff's premises, and greatly damages the plaintiff in the value of his said property; that said fence is a great annoyance to the plaintiff and his family, and not only cuts off the air and light, but shuts out the view from said premises of plaintiff south and southwest, and greatly detracts from the appearance of plaintiff's said premises; that plaintiff has no complete and adequate remedy at law; and that, unless this court interferes by injunction, he will suffer great and irreparable injury.

"Wherefore he prays that on a final hearing of this cause he may have a decree enjoining the defendants, their

agents and servants, from maintaining said fence and requiring them to tear down and remove the same and every foot thereof, and he prays for all further equitable and general relief."

The Lesters answered, admitting the ownership of the property and its occupancy as a home as alleged in the petition, and, further answering, denied each and every allegation in the petition made, and prayed for judgment.

The plaintiff testified in support of the averments made in the petition that his lot had a frontage on the south of 225 feet, and that his dwelling house was located back from the street line 26 feet, and fronted on Fourteenth street, which street ended at his property line, and that he had donated to the public an alleyway leading to the right and on to the left, and these alleyways were eight feet in width, and unpaved; that he had a very desirable property and comfortable house, and had spent much time and labor in the improvement and decoration of his grounds with shrubbery and flowers and walks and driveways; and that the Lesters had erected a tight-board fence six feet high on their ground along the alleyway between the two properties; that this fence was constructed of plain pine boards, and 2x4's, with the rough side toward plaintiff's house; that the smooth side of the boards were inside and painted white, while the side towards plaintiff's place was unpainted and bare and unsightly, and cut off the view of his shrubbery, along the west of his ground, and that the fence was erected on account of spite, and not for any useful purpose; that the maintenance of the fence was not only an annoyance to him and his family, but depreciated the value of his property. Witnesses were called in his behalf, who corroborated his testimony. Lester testified that he had no personal acquaintance with their neigh-

bor, Bixby, and that he had never spoken to him, and had
no desire to harrass or annoy him, and did not think about
Bixby when he built the fence, but built it for his own
convenience, entirely upon his own ground, and to protect
his own property and its privacy; that the fence was five
feet and nine inches above the sidewalk, and was built
from new No. 2 pine lumber; that the alleyway along
which this fence was erected was only 15 feet distant from
his dining room window, and that the alleyway was a
public thoroughfare much traveled by ice wagons, grocers'
deliveries, and by negroes afoot going to the negro settle-
ment out beyond Fon Du Lac, and that the privacy of his
home was exposed to the gaze and view of the persons
passing through the alley, and by persons cutting across
his yard before the fence was erected; that the traffic
through the alley cut up the ground, and during dry and
windy weather the dust blew into his house; that he kept
in his yard chickens and pigeons, and a bulldog, and also
cultivated therein flowers; and that the fence was erected
in the manner it was for his own convenience and protec-
tion entirely, and to guard against the dust from the alley
and to cut off the view of complainant's garden and cow
and the droppings from his cow shed. The testimony was
supported by that of other witnesses called on behalf of
the defendants in error.

It is urged in the plaintiff in error's brief in support
of this cause of action in part as follows:

"He was beautifying his yard and making a park out
of it, and while this was going on his neighbor erected
this unsightly fence (unsightly on plaintiff's side, but not
so on defendant's side), which is the first thing to greet
him in the morning, and the recollection of which stays
with him after he retires at night. It was the contrast

between the appearance of plaintiff's side of this fence and the surroundings that caused it to be placed there, and it was this idea that caused such glee on the part of Mrs. Lester and prompted her to say from an overflowing heart: 'How are the mighty fallen?' What explanation do they give to this act on her part? None. There is but one answer to it, and that is the interpretation we place on it. It is the most potent fact in the case, aside from the photographs. People who have æsthetic tastes, and attempt to have a home in keeping with such tastes, are entitled to protection."

To which the defendants in error replied in defense of the usefulness of the fence as follows:

"It shielded Mr. Lester's home, to a substantial degree, from the dust of an unpaved alley carrying considerable traffic; it made it convenient and satisfactory, if indeed it did not make it possible, for Mrs. Lester to beautify the north line of the lot with a row of roses and to attend to her flowers; it protected the privacy of their yard and dining room from the close gaze of the many people, white and black, who constantly passed through the alley; it enhanced the safety of the home and chickens and pigeons in the back yard, and to a greater degree in view of Mr. Lester's absence from home two-thirds of the time; it prevented trespassing upon the lot; it concealed a muddy or a dusty washed and rutted alley, and cut off a close view of the Bixby cow and manure pile, and the high garden weeds towards the end of summer."

And in reply to the claim of malice shown by the remarks of Mrs. Lester in regard to Mr. Bixby, it is said:

"The third incident arose one Sunday morning as Mr. and Mrs. Lester were walking through their yard, and Mr. Bixby was hoeing weeds in the alley. Mr. Bixby alleges that she remarked: 'How are the mighty fallen?' And that she laughed. Mr. Lester remembered the occasion, but did not recall his wife's words. The record does

not disclose whether Col. Bixby wore the hat and pants that usually attend the hoe, nor whether he sacrificed a peaceful hour in church that morning to accomplish the long deferred extermination of the tall and stately weeds which fringed the unpaved alley and in later summer claimed the Bixby garden for their own, but we submit that Mrs. Lester was in good taste when she gave vent to the words of the prophet: 'How are the mighty fallen.' 2 Samuel, xix, 25, 27. What connection is there between her remark and the fence? One must have a vivid imagination to torture this harmless and humorous incident into evidence of 'malice' in the then long-built fence."

The law of this case is well stated by the Supreme Court of Indiana in the case of *Giller v. West*, 162 Ind. 17, at page 20, 69 N. E. 548, at page 549, as follows:

"The fact that the division fence erected by the appellant was close and high, and made of rough and unsightly materials, and that it cut off the view from appellant's lot toward Pierce street, and shaded and thereby injured her garden, did not render the fence a private nuisance, nor entitle the appellee to have it abated. The appellant had the right to build a partition fence, a house or any other structure on his premises, and along the entire length of the line dividing them from the real estate owned by the appellee. The latter had no easement of light, air, or view in or over the appellant's lots, and she had no legal cause for complaint if these were interfered with or entirely shut off by the erection of a fence, house, or other building. The appellant had the right to use his premises, and every part of them, for any lawful purpose which did not deprive the adjacent owner of any right of enjoyment of her property recognized and protected by law. The erection and maintenance of a division fence thereon was a lawful use of the appellant's land, and no legal right of the appellee was violated or invaded thereby. Had the appellant erected a house 30 feet high and 114 feet long on the part of his lot adjacent to the appelle's premises,

thereby in a much more serious manner cutting off the sunlight, air, and view from appellee's lot and residence, she could not have been heard to complain of such use of his land. If appellant could lawfully construct such a building on his lot, he could, without doubt, lawfully erect and maintain a close fence, eight feet in height, on the division line. That it was rough and unsightly made no difference. The law does not require that such fences shall be constructed of fine materials, or that they shall be attractive in appearance."

The Supreme Court of Arkansas, in the case of *Gus Blass Dry Goods Co. v. Reinman & Wolfort*, 102 Ark. 287, 143 S. W. 1087, say:

"The right of the complaining party to relief necessarily depends upon the degree of the injury arising from the alleged nuisance, which is chiefly determined by the evidence. The injury and resultant damages flowing therefrom may be great or they may be slight, and the determination of the rights of the complaining party and his remedy must necessarily depend upon the varying circumstances of each case. It is well settled that the injury must not be fanciful or imaginary, nor such as to result in a trifling annoyance, inconvenience, or discomfort which may affect those who possess too sensitive a nature or too fastidious a taste. The law is applied only to the normal man—the man of ordinary habits and ordinary sensibilities. The law only takes cognizance of sensible and substantial discomforts and inconvenience."

We are constrained to approve the conclusion of the trial court that the evidence in this case did not justify an injunction, inasmuch as the fence complained of did not constitute a nuisance and was not erected and maintained purely out of spite and ill will toward complainant, as in *Smith v. Speed*, 11 Okla. 95, 66 Pac. 511, 55 L. R. A. 402, but was erected in the exercise of a lawful right of

the owner to improve and benefit his own property. The complainant is doubtless a man of education and refinement, and evidently takes great pride in his home and in beautifying the grounds surrounding the same, for all of which he is to be commended. He was doubtless annoyed and harrassed at the unsightly view that this alley presented. Still the defendants in error had a perfect right to erect the fence and maintain the same to protect their home and their property and add to its privacy, comfort, and convenience, and they were not compelled to consult the "æsthetic taste" of their neighbors as to the kind of a fence they should build or whether the smooth or the rough side thereof faced in or out, or as to the color of the paint they should use thereon. They were clearly within their rights in consulting and satisfying their own taste in these matters.

The judgment appealed from is affirmed.

By the Court: It is so ordered.