See under (1, 2) anno. 21 L. R. A. 599; 20 L. R. A. (N. S.) 156; 22 L. R. A. (N. S.) 791; 27 R. C. L. pp. 1140-1142, 1147; 4 R. C. L. Supp. p. 1786, 5 R. C. L. Supp. 1495. (3) 2 R. C. L. p. 194; 1 R. C. L. Supp. p. 433; 4 R. C. L. Supp. p. 90; 5 R. C. L. Supp. 79.

---

## CITY OF TECUMSEH v. DEISTER.

No. 15540—Opinion Filed Sept. 15, 1925.

**1. Municipal Corporations — Nuisance — Septic Tanks for Sewage.**

While the construction, by a municipal corporation, of a sewer system and the erection of a septic tank for treating or purifying the sewage is not a nuisance per se, it may, after construction, be operated in such manner as to create a nuisance, and the maintenance of such nuisance renders the municipal corporation liable in damages to an adjacent landowner, who is injured thereby, whether such landowner acquired title to the land prior or subsequent to the erection and construction of the sewer and septic tank, where the action is founded, not upon the faulty or negligent construction thereof, but upon the nuisance created by its negligent and faulty operation which caused the injury.

**2. Same—Discharge of Sewage Into Stream —Liability to Adjacent Landowner.**

Where a municipal corporation discharges sewage in a creek, polluting the waters of the stream, or discharges it into a dry channel, where the rainfall will cause the sewage to be washed through and upon, and deposited upon the lands of another, to the injury of such owner, and the sewage, so deposited and discharged, causes the air to be impregnated with foul and noxious odors, offensive to the smell and injuriously affecting the comfort and repose of the adjacent landowner in his enjoyment of the premises, and the sewage, so deposited, works injury to the live stock and crops of the owner of the land, such municipal corporation is liable for damages arising from the maintenance of the nuisance so created.

(Syllabus by Ruth, C.)

Commissioners' Opinion, Division No. 2.

Error from Superior Court, Pottawatomie County; Leander G. Pitman, Judge.

Acion by Henry S. Deister against the City of Tecumseh. Judgment for plaintiff, and defendant appeals. Affirmed.

Clarence Robison, for plaintiff in error.

T. G. Cutlip, for defendant in error.

Opinion by RUTH, C. The parties will be designated herein as they appeared in the trial court. Plaintiff's petition alleges, in substance, that he owns lands in Pottawatomie county, which lands with the improvements are of the value of $6,000, and the land is the home of plaintiff and his family; that the improvements consist of a house, barn, hog wire fences; five acres of growing cherry trees, plums, apples, peaches, berries, grapes, and five acres of alfalfa; that his livestock consisted of horses, cows, hogs, chickens, and turkeys; that the bed of a stream meandered across his lands, and the channel was dry except when it rained; that the defendant city had constructed a sewage sytem, and that the water, refuse, and excrement flows through the sewer into a reservoir or septic tank immediately south of the south line of plaintiff's premises, and at a point where the channel enters plaintiff's premises, and the refuse, sediment, and excrement flow over plaintiff's premises and pollute the soil and produce a noxious and poisonous substance, and emit poisons, noisome stenches injurious to the health of plaintiff and his family, and destroy the enjoyment of said home and the peace and comfort of plaintiff and his family. Plaintiff further alleges by reason of this deposit, 18 head of hogs sickened and died, and his chickens, turkeys, berries, and fruits are a loss. The petition contains the formal allegations of negligence, willfully and unlawfully committed, and prays damages in the sum of $5,000. The second count prays an injunction against the defendant dumping the sewage into the dry channel, and an abatement of the nuisance.

Defendant answered by general denial, and for special defense alleges the septic tank and sewer existed several years prior to the occupancy or ownership of the lands by plaintiff, and plaintiff came on the land with full knowledge that the septic tank was so located, and upon complaint being lodged by plaintiff, all bad conditions were corrected.

The cause was tried to a jury and a verdict returned for plaintiff fixing his damages at $500, and defendant appeals. Defendant groups its assignments of error under the following heads: (1) That the verdict is not sustained by the evidence and is contrary to law. (2) The verdict is based on incompetent and prejudicial evidence. (3) Misconduct of counsel in his closing argument in appealing to the prejudice of jurors. (5) Excessive damages. Defendant groups and presents assignments of error Nos. 1, 2. and 3 under one head and assumes the position that because the plaintiff acquired the land from his father after the septic tank was erected by defendant, he could not recover, but this position cannot be maintained. While a city has authority to build or construct sewers for the benefit of the inhabitants of the city, such city is required to maintain its sewer system, and take care of the sewage flowing through the same in such manner as not to constitute or create a nuisance, and though such city installs a system of sewage disposal for the purpose of purifying the sewage, and eliminating noxious stenches or odors, it is the duty of the city to operate such system after its installation, and at all times, so as not to constitute a nuisance, and its failure so to do renders it liable to persons injured.

To hold that a city might dump raw sewage into a stream at the city limits, and install a sewage disposal plant at the outlet of the sewer, and permit the city to operate the plant in a manner constituting a nuisance, and no liability attached to the city, except to the particular individual who owned the land at the time of the construction of the system, would have the effect of laying waste and idle vast acreages of productive land, if the original owner moved away or died, and would have the effect of retarding the growth of the city in the direction of such sewer outlet or disposal system.

Persons who desire to live in a city where they may enjoy all modern conveniences and where sewers are necessary for their health, comfort, and safety, are expected to and must bear the burden incident to the enjoyment of these conveniences, and one of the burdens is the expense of maintaining the system in a manner that will not infringe upon the rights of others, or impair, or depreciate the value of adjacent property, by whomsoever owned, and whether title was acquired prior or subsequent to the erection of the plant. In other words, if the city elects to construct sewers and sewage disposal plants, it must at all times thereafter maintain and operate the same so as not to constitute a nuisance.

It is not the fact that the city, in the instant case, constructed a septic tank near the land afterwards acquired by plaintiff that forms the basis of this action, but it is the manner in which it was being operated after its construction, which constituted a

nuisance and fixes the liability upon the defendant for such damages as were proven to have been sustained by plaintiff by reason thereof.

Defendant further contends that plaintiff could only recover, if at all, a sum equal to the difference between the reasonable rental value of the land under ordinary conditions and its rental value while the nuisance remained unabated. No authority is cited in support of this contention, and we have been unable to find an opinion so holding, and we would not be inclined to follow it, or consider an authority in the instant case, if such an opinion had been cited or found.

Plaintiff alleges his hogs sickened and died on account of the excrement dumped upon his land, that his fruit and berries were ruined and rendered worthless, that the stench and odors arising from the matter dumped in the dry channel rendered his home uninhabitable; caused him to close his doors and windows in an effort to keep out the odors, and the evidence of witnesses was that they had moved from that vicinity on account of the unbearable stenches or odors arising from the sewage dumped into this dry channel. The evidence further disclosed that 18 of plaintiff's hogs sickened and died. One witness testified they died of hog cholera, and a physician testified that this disease could be contracted from the sewage if the germs were present therein, and it was purely a question of fact to be determined by the jury, as to what caused the death of the hogs. There is a wide divergence of opinion among physicians and bacteriologists as to whether disease is present in mere odors, and it is not necessary in this case to comment upon these opinions.

This action is founded upon the maintenance of a nuisance. Blackstone defines a nuisance as "anything that worketh hurt, inconvenience or damage to another." Sunderland on Damages (section 1035) defines. nuisance as anything wrongfully done to the hurt or annoyance of the lands, tenements or hereditaments of another; and adds that it may be anything which is circulated to interfere with the comfortable enjoyment of a man's house, as smoke, noise or bad odors, even when not injurious to health.

In Baltimore & Potomac Ry. Co. v. Fifth Baptist Church. 108 U. S. 329, 2 Sup. Ct. 726, 27 L. Ed. 739, the court said:

"That is a nuisance which annoys and disturbs one in the possession of his property, rendering its ordinary use or occupation physically uncomfortable to him"
—and the court further held that for such annoyances and discomfort, courts of law will afford redress by giving damages against the wrongdoer.

The above authority and definitions were cited with approval by this court in Choctaw, O. & G. R. Co. v. Drew, 37 Okla. 396, 130 Pac. 1149, and numerous authorities are therein cited in support of the rule announced, and this court further said:

"The underlying principle, involving the question of liability, is discussed in Markwardt v. City of Guthrie, 18 Okla. 32, 90 Pac. 26, 9 L. R. A. (N. S.) 1150, 11 Ann. Cas. 581, in which it was held that a municipal corporation was liable for damages for the maintenance of a nuisance, where it discharged sewerage into a creek or river, polluting the water of the stream, causing it to become foul and impregnated with noxious and poisonous substances, rendering it unfit for domestic or other uses, and there creating and maintaining a nuisance which was detrimental to the health, comfort, and repose of a lower riparian owner, and which diminished the value of his lands, and where it was observed that the great weight of the American and English authorities was in accord with the court's conclusion."

The principle involved has been frequently considered by this court and it were an idle pursuit to compare. discuss, or cite authorities from other states. See Colbert v. City of Ardmore, 31 Okla. 537, 122 Pac. 508; City of Ardmore v. Colbert, 52 Okla. 235, 152 Pac. 603; City of Cushing v. Hugh, 73 Okla. 151, 175 Pac. 229; City of Cushing v. Luke, 82 Okla. 189, 199 Pac. 578.

The defendant further contends: (2) That the verdict is based on incompetent and prejudicial evidence. The verdict must necessarily be based on prejudicial evidence, i. e., hurtful, injurious, disadvantageous, and detrimental. otherwise plaintiff could not make out his case, so we will consider the error as based on incompetent evidence. C. M. Darcy, the city health officer, was asked if he recalled what directions he gave the mayor and city authorities with reference to the correction of the condition he found in the sewage. Counsel for defendant objected to the question for the reason the directions should be in writing, which would be the best evidence. We know of no statute requiring such communications to be in writing, and counsel does not direct our attention to any city ordinance of the defendant city requiring the communication to be in writing, and there was no effort made to prove the same was in writing.

True it is that if the directions given had been in writing, such writing would have been the best evidence if it could have been produced. Counsel might have ascertained whether or not it was in writing by propounding a plain question, but he did not avail himself of the privilege or cite any ordinance requiring it to be in writing. The witness answered that he explained at the time that the tank was most likely full of solid matter, and should be cleaned by taking out the solid matter and burying it, and if the conditions remained the same after that, they were to disinfect the sewage. No exception was taken to the answer nor did counsel move that it be stricken, and the overruling of defendant's objection upon tte reason assigned was not error. The witness testified he cleaned the tank twice, but dumped the solid matter, the refuse, offal, and excrement into the dry channel where it would of necessity stay until a rain washed it across plaintiff's land.

At the close of all the testimony, the defendant made a general objection "to this class of evidence," with reference to the structure of the house, barns, fences, value of the land; animals brought onto the place and family brought to the place, because it was all done after the sewers were constructed and the tank built," and that plaintiff knew of the sewer system, and its alleged condition, and then attempts to recover for the extreme amount that he can imagine a first-class bottom farm to be worth. Defendant did not object to any questions propounded along these lines at the time witnesses were testifying, so far as his brief discloses.

It is the privilege and duty of counsel to object to a question at the time it is propounded, stating his objections, and to move to strike the answer, stating his reasons there'or, to the end that the court be given an opportunity to consider and pass upon the same, and where counsel fails to make timely objections to testimony, the error, if any, will be deemed to have been waived and error cannot be predicated upon the admission of the testimony.

Defendant next presents the misconduct of counsel for plaintiff in his address to the jury, as contained in the remark that: "It was the custom of the city of Tecumseh in this matter to disregard the private right of the plaintiff, and such was the general conduct of cities in the state." While the expression was unnecessary, we cannot say the forepart thereof, and down to and including the word "plaintiff" was not justifiable under the evidence. It appears complaints had been lodged with the city officials and they had cleaned out the septic tank on two occasions, and had thrown the solid putrid matter out in the open and into the dry channel from whence the odors must of necessity be wafted across the plaintiff's lands, and when the first rain fell, it must of necessity be washed over and upon plaintiff's rights, but the expression that "such was the general conduct of cities of the state" was improper. What other cities did was not an issue in this case, and could not be made an issue, and counsel should at all times exercise the utmost caution in addressing juries, and confine themselves to a discussion of the evidence and the law as given by the court, but as the plaintiff sued for $5,000 damages and the jury returned a verdict for $500, we cannot believe the jury was influenced by the remarks complained of.

An examination of the briefs discloses some very acrimonious language employed, indicating a feeling existed between counsel that is to be deplored in the trial of a cause, and which frequently gives rise to expressions having no place in the record. This court is not concerned with the opinions of counsel touching the personal appearance, learning, zeal, activity, or inactivity of opposing counsel, which should not be indulged.

In conclusion the defendant complains that the amount of the verdict is excessive. A careful examination of the evidence fails to disclose that the jury was influenced by prejudice or passion and the amount is amply sustained by the evidence.

It is next complained that the court erred in submitting to the jury the maximum amount that could be recovered. Plaintiff fixed his damages at $5,000, and the court instructed the jury that if they found for the plaintiff their verdict should be for such an amount as would reasonably compensate the plaintiff for any loss or damage he had suffered by reason of the conditions he complains of, in an amount not to exceed $5,000. There was no error committed in the giving of the instructions, and for the reasons herein stated, the judgment of the trial court should be affirmed.

By the Court: It is so ordered.

Note.—See under (1) 28 Cyc. pp. 1315, 1323, 1333; 29 Cyc. p. 1180. (2) 28 Cyc. pp. 1333, 1334; anno. 48 L. R. A. 691; 61 L. R. A. 694; 20 L. R. A. (N. S.) 1050; 47 L. R. A. (N. S.) 137; 20 R. C. L. p. 402; 4 R. C. L. Supp. 1360, 5 R. C. L. Supp. p. 1104.