OSCN Found Document:LAUBENSTEIN v. BODE TOWER, L.L.C.

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 LAUBENSTEIN v. BODE TOWER, L.L.C.
2016 OK 118
Case Number: 112105
Decided: 12/06/2016
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2016 OK 118, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

KEN LAUBENSTEIN and BILLIE WALLACE, Plaintiffs/Appellees,
v.
BODE TOWER, L.L.C., Defendant/Appellant.

CERTIORARI TO THE COURT OF CIVIL APPEALS, DIVISION IV, 
ON APPEAL FROM THE DISTRICT COURT OF MUSKOGEE COUNTY, 
STATE OF OKLAHOMA, HONORABLE NORMAN D. THYGESEN

¶0 Plaintiffs filed a lawsuit against the defendants asserting a nuisance claim. Plaintiffs' cause of action was predicated on the placement of a cellular telephone tower adjacent to their respective properties. Following a bench trial, the lower court entered a judgment in favor of the plaintiffs and directed BoDe Tower, LLC to disassemble the cellular tower. The Court of Civil Appeals, Division IV, affirmed the judgment. We granted a writ of certiorari and conclude the trial court's decision was against the clear weight of the evidence.

COURT OF CIVIL APPEALS OPINION IS VACATED AND THE 
TRIAL COURT'S JUDGMENT FILED JULY 29, 2013 IS
REVERSED; ON REMAND THE TRIAL COURT IS DIRECTED
TO ENTER JUDGMENT IN FAVOR OF DEFENDANTS

Thomas Marcum, BURRAGE LAW FIRM, Durant, OK, for Defendants-Appellants
D.D. Hayes, HAYES LAW OFFICE, Muskogee, OK, for Plaintiffs-Appellees

GURICH, V.C.J. 

Facts & Procedural History

¶1 BoDe Tower is an Oklahoma limited liability company which owns a tract of land in the Gooseneck Bend area of Muskogee County. The property lies less than three miles outside of the City of Muskogee near a sharp meander in the Arkansas River. In 2009, BoDe Tower began the process of securing authorization from state and federal officials for the construction of a telecommunications tower on the tract in an effort to fill a gap in cellular coverage. Testimony indicated cellular reception was non-existent in the area. One local resident testified he had "zero" reception and was looking forward to future coverage.[1]

¶2 BoDe hired an expert engineering firm, Monte R. Lee & Co., to assist with completing mandatory paperwork and ensuring compliance with all regulatory prerequisites.[2] Prior to construction of the tower, BoDe was required to obtain clearance from multiple governmental agencies, including: (1) Federal Communications Commission; (2) U.S. Fish & Wildlife Service; (3) Federal Aviation Administration; (4) U.S. Army Corps of Engineers; (5) Oklahoma Department of Agriculture; and (6) Oklahoma Historical Society. BoDe Tower fully complied with all state and federal requirements before constructing the telecommunications tower. Further, no zoning requirements or restrictive covenants prohibited assembly of the tower on BoDe's property. There is no dispute that BoDe's construction of the tower was a lawful endeavor.[3]

¶3 As required by federal law, BoDe consulted with local Native American tribes who were given an opportunity to voice concerns over the potential impact the cellular tower might have on historic or cultural sites.[4] No objections were made. The FAA, however, conditioned its approval of the proposed siting on installation of specific warning lights designed to alert air traffic.[5] BoDe also issued public notice of the planned development in the Muskogee Phoenix and informed nearby residents of the proposed cellular tower. Neighbors and BoDe's principal owner conducted a meeting relating to the project in February 2010.

¶4 On February 9, 2010, adjacent property owners Ken Laubenstein and Billie Wallace filed an action in the District Court of Muskogee County, alleging the proposed cellular tower was a public and private nuisance.[6] Although the petition sought to enjoin construction of the tower, Plaintiffs never pursued injunctive relief. Assembly of the tower was finalized sometime in 2010.

¶5 A bench trial was held over five days, spanning from August, 13, 2012 to April 26, 2013. Testimony from a representative of BoDe's engineering consultant established full compliance with all state and federal regulatory requirements prior to installation of the tower. Laubenstein was the only resident plaintiff who testified at the trial.

¶6 The vast majority of Laubenstein's testimony centered around his efforts to build a pristine and isolated personal wildlife refuge around his home. Because he viewed the property as his private sanctuary for birds and animals, Laubenstein disliked any disruption to his solitude. He explained during trial, "I just don't like disorder around me, and I want a clean, clear - - clean environment in which to live."[7] In fact, when he first moved into his residence, Laubenstein was immediately unnerved by existing noise, light, and car emissions caused by traffic and security lighting in the area. To help eliminate these irritations, Laubenstein planted 700 trees throughout his acreage. He also built a four-foot earthen berm around the perimeter of his home in an effort to block all noise, light, and car emissions. The following exchange took place during trial:

Q. And you were bothered by the car lights coming down -- car lights and sound coming down Woodland Road, and that's why you built this berm and all these plantings, to cover the noise and the light from the travel down the road?

A. Well, the plantings, I wanted privacy. You know, the fact that I put - - yes, I don't want traffic noise and lights.[8]

Laubenstein removed security lighting throughout his entire property to ensure it was completely dark. He even persuaded neighbors to install glare shields on their security lighting to purge any interference with his tranquility. Despite living less than three miles from Muskogee, Laubenstein was also bothered by the reflective glow of city lights, as the illumination interfered with his astronomy hobby. He characterized the area as "semisuburban."[9] Laubenstein testified it was his hope and intention to leave his property in an immaculate unchanged condition for future scientific study.

¶7 Laubenstein's nuisance claim was grounded entirely on his dissatisfaction with the tower's appearance and its federally mandated warning lights.[10] For example, the heart of his claim is best summarized in the following testimony:

Well, from the place that I enjoy sitting the most, and I sit there day and night, it depicts the tower across the way, with its flashing light on top and three lights that are halfway up the tower, and it shows it reflecting in the water, and the reflection comes almost all the way across the water, right to where I am sitting. . . . It's about 10 or 12 feet from where I sit, constantly on and off, red and no red. And it's extremely unnatural and, frankly, it's very annoying. It's more than that, it's intrusive.[11]

 

It was clear Laubenstein was particularly fastidious and acutely sensitive to any foreign stimulus on his property. Aside from aesthetic concerns, Laubenstein offered nothing to establish the cellular tower created an environment so inhospitable as to cause "substantial injury to comfort, health, or property." Kenyon v. Edmundson, 1920 OK 351 (syl. 4), 193 P. 739, 740.

 

¶8 On June 28, 2013, the trial judge announced his ruling, which concluded the cellular tower was a private nuisance. He directed the tower to be removed from the property within sixty days. However, the abatement directive was stayed pending appellate review. BoDe appealed the lower court ruling and COCA affirmed the nuisance finding. In upholding the decision, COCA declined to give weight to the lawful status of the cellular tower under either 50 O.S. 2011 §§ 1 or 4 and held there was sufficient evidence to find a private nuisance in fact.

Standard of Review

¶9 Laubenstein requested that the trial court enjoin BoDe from constructing and operating its telecommunications tower. An action for abatement of a nuisance by permanent injunction is equitable in nature. Jackson v. Williams, 1985 OK 103, ¶ 9, 714 P.2d 1017, 1020. "In a case of equitable cognizance, a judgment will be sustained on appeal unless it is found to be against the clear weight of the evidence or is contrary to law or established principles of equity." McGinnity v. Kirk, 2015 OK 73, ¶ 8, 362 P.3d 186, 190 (citation omitted). When reviewing a case at equity, this Court is not bound by the trial court's findings and will consider the whole record and weigh the evidence. Harrell v. Samson Resources Co., 1998 OK 69, ¶ 31, 980 P.2d 99, 107 (citation omitted).

Analysis

¶10 We have said that a nuisance "arises from an unreasonable, unwarranted, or unlawful use" of property. Briscoe v. Harper Oil Co., 1985 OK 43, ¶ 9, 702 P.2d 33, 36. An alleged nuisance must "substantially interfere with the ordinary comforts of human existence." Kenyon, 1920 OK 351, ¶ 6, 193 P. at 741 (emphasis added). Further, "a mere trifling annoyance, inconvenience, or discomfort" should not be deemed a nuisance. Id. A nuisance action may not be maintained when based on (1) lawful use of the property; (2) which affects solely the "aesthetic taste" of the aggrieved party. Bixby v. Cravens, 1916 OK 406, ¶ 10, 156 P. 1184, 1187. The evidence in this case unequivocally established the tower was lawfully constructed, and the nuisance claim was predicated entirely on Laubenstein's distinctive aesthetic preferences.

¶11 Nuisance claims founded solely on aesthetic harm are not actionable. City of McAlester v. King, 1957 OK 270, ¶ 13, 317 P.2d 265, 270 (rejecting nuisance claim arising from a water tower constructed on an adjacent tract which affected plaintiffs' view and impaired lighting).[12] Laubenstein's entire case hinged on the cellular tower being visually unpleasant. In Bixby, 1916 OK 406, 156 P. 1184, we rejected an aesthetic nuisance claim based on a neighbor's construction of a wooden fence between two neighboring properties. As in the present case, the plaintiff in Bixby alleged that the fence was an aesthetic nuisance. Specifically, he argued the fence was unsightly, impaired his view, impeded airflow and light to his premises, and greatly damaged the value of the property. Id. ¶ 2, 156 P. at 1185. We found the complaints were not an actionable nuisance:

[T]he fence complained of did not constitute a nuisance and was not erected and maintained purely out of spite and ill will toward complainant. . . but was erected in the exercise of a lawful right of the owner to improve and benefit his own property. The complainant is doubtless a man of education and refinement, and evidently takes great pride in his home and in beautifying the grounds surrounding the same, for all of which he is to be commended. He was doubtless annoyed and harassed at the unsightly view that this alley fence presented. Still the defendants in error had a perfect right to erect the fence and maintain the same to protect their home and their property and add to its privacy, comfort, and convenience, and they were not compelled to consult the 'aesthetic taste' of their neighbors as to the kind of a fence they should build or whether the smooth or the rough side thereof faced in or out, or the color of the paint they should use thereon.

Id. ¶ 10, 156 P. at 1187; see also Oliver v. AT&T Wireless Serv., 90 Cal. Rptr. 2d 491, 501 (Cal. Ct. App. 1999) ("[T]he displeasing appearance of an otherwise lawful structure [cellular tower] on one side of a boundary cannot be deemed to substantially interfere with the enjoyment [of plaintiff's property]").[13]

 

¶12 Our jurisprudence demands evidence of substantial interference with the use and enjoyment of property. see, e.g., Kenyon, 1920 OK 351, 193 P. 739 (Defendant's business left animal carcasses on the property, resulting in noxious odors and green fly infestation.); Epps v. Ellison, 1921 OK 279, 200 P. 160 (Cotton oil mill and cotton gin covered area with dust and lint from operations, and emitted steam and exhaust from the engine; noise, dust and emissions caused nearby homes to become uninhabitable and entirely worthless.); City of Tecumseh v. Deister, 1925 OK 661, 239 P. 582 (Defendant's malfunctioning septic system caused raw sewage to flow across plaintiff's property, leading to the death of livestock and made plaintiff's home uninhabitable.); Fairfax Oil Co. v. Bolinger, 1939 OK 350, 97 P.2d 574 (Vibrations from defendant's operation of an oil and gas well caused physical damage to the premises.); Cities Serv. Oil Co. v. Merritt, 1958 OK 185, 332 P.2d 677 (Saltwater pollution from drilling operations rendered landowners water well permanently unpotable.); Nichols v. Mid-Continent Pipe Line Co., 1996 OK 118, 933 P.2d 272 (Leaking hydrocarbons from drilling activity poisoned cattle grazing on plaintiff's property.). The aforementioned decisions present facts markedly different from those in the current appeal. In each of the cases, plaintiffs faced either physical injury to their property or the offensive activity rendered their homes uninhabitable.

 

Conclusion

¶13 Considering the totality of the evidence presented in this case, BoDe's cellular tower cannot be deemed actionable nuisance. Our case law prohibits nuisance claims based entirely on aesthetic concerns. It would be wholly unreasonable to allow one individual's visual sensitivities to impede development of cellular phone service for the residents of Muskogee. BoDe Tower undertook significant investment and complied with all regulatory hurdles. The judgment of the Court of Civil Appeals is vacated, and the trial court's judgment in favor of the Plaintiffs is reversed. On remand, the trial court is directed to enter judgment in favor of the Defendants.

COURT OF CIVIL APPEALS OPINION IS VACATED AND THE 
TRIAL COURT'S JUDGMENT FILED JULY 29, 2013 IS
REVERSED; ON REMAND THE TRIAL COURT IS DIRECTED
TO ENTER JUDGMENT IN FAVOR OF DEFENDANTS

¶14 Combs, C.J., Gurich, V.C.J., Kauger, Watt, Winchester, Taylor, Colbert,
Reif, JJ., concur.

¶15 Edmondson, J., recused.

FOOTNOTES

[1] Bruce Thompson testified that he had endured difficulty as a result of no telephone service following two separate ice storms. Tr. Vol. IV, p. 69-70.

[2] Monte R. Lee & Co. assisted BoDe Tower with obtaining approval of the cellular tower siting. This process necessitated conformity with multiple statutory conditions, including the Telecommunications Act of 1996 (TCA of 1996)(47 U.S.C. § 251 et. seq.); National Environmental Policy Act (NEPA)(42 U.S.C. § 4321 et seq); and the National Historic Preservation Act (NHPA)(16 U.S.C. § 470, et seq.). In addition, BoDe had to obtain specific approval of the siting through the Antenna Structure Registration (ASR) administered by the FCC.

[3] Title 50 O.S. 2011 § 1 defines what can be construed as a nuisance:

A nuisance consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either:

First. Annoys, injures or endangers the comfort, repose, health, or safety of others; or

Second. Offends decency; or

Third. Unlawfully interferes with, obstructs or tends to obstruct, or renders dangerous for passage, any lake or navigable river, stream, canal or basin, or any public park, square, street or highway; or

Fourth. In any way renders other persons insecure in life, or in the use of property, provided, this section shall not apply to preexisting agricultural activities. (emphasis added).

[4] National Historic Preservation Act (NHPA)(16 U.S.C. § 470, et seq.); 36 C.F.R. § 800.3.

[5] Title 50 O.S. 2011 § 4 provides: "Nothing which is done or maintained under the express authority of a statute can be deemed a nuisance." COCA determined 50 O.S. 2011 § 4 did not apply to the present case because the cell tower site was not "designated." To reach this conclusion, COCA relied on our prior decision in E.I. Du Pont de Nemours Powder Co. v. Dodson, 1915 OK 256, 150 P. 1085. However, E.I DuPont does not mandate that property be specifically zoned for the activity. It merely required approval of the particular site by a person with statutory authority to issue such a finding. DuPont, ¶ 10, 150 P. at 1088.

[6] Billie Wallace was a named party in the petition; however, the record indicates her property was the subject of a foreclosure proceeding, and she did not participate in the trial. Therefore, any claims raised by Ms. Wallace are deemed abandoned.

[7] Tr. Vol. I, p. 16.

[8] Tr. Vol. II, p. 47.

[9] Tr. Vol. II, p. 51. The Court takes judicial notice that the population of Muskogee in 2010 was 39,225. see, http://www.census.gov/quickfacts/table/PST045215/4050050,40101.

[10] Although Laubenstein expressed concern over radio frequency (RF) emissions from the tower, he admitted this fear was mere speculation. COCA referenced this testimony when weighing the evidence in support of the trial court's ruling. However, it should be noted that the TCA of 1996 prohibits state regulation of cell tower siting on the basis on RF emissions when the facility is in compliance with FCC regulations. 47 U.S.C. § 332(c)(7)(B)(iv). Section 332(c)(7)(B)(iv) reads:

No State or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the [FCC]'s regulations concerning such emissions.

Preemption of state law includes claims brought under either the common law or state statute. see Johnson v. American Towers, 781 F.3d 693, 706 (4th Cir. 2015); Farina v. Nokia, Inc., 625 F.3d 97 (3rd Cir. 2010).

[11] Tr. Vol. I, p. 56.

[12] see also Julian Conrad Juergensmeyer and Thomas E. Roberts, Private Nuisances, Land Use Planning and Development Regulation Law § 14.4, n.26 (3d ed. Apr. 2016 update) citing Rankin v. FPL Energy, LLC, 266 S.W.3d 506 (Tex. Ct. App. 2008) (finding emotional response to obstruction to aesthetic view created by wind farm was not actionable as nuisance claim).

[13] Recently U.S. District Judge Timothy D. DeGiusti issued an order granting summary judgment to Kingfisher Wind, LLC rejecting nuisance claims brought by numerous landowners. Walker v. Kingfisher Wind, LLC, Case No. CIV-14-914-D (Doc. 160) (October 13, 2016). As with Laubenstein's claims, aesthetic injuries were the basis of one of the claims in Kingfisher Wind, wherein plaintiffs sought the removal of multiple wind turbines.

 

 





 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 1939 OK 350, 97 P.2d 574, 186 Okla. 20, FAIRFAX OIL CO. v. BOLINGER
Discussed
 1915 OK 256, 150 P. 1085, 49 Okla. 58, E. I. DU PONT DE NEMOURS POWDER CO. v. DODSON
Discussed
 1916 OK 406, 156 P. 1184, 57 Okla. 119, BIXBY v. CRAVENS
Discussed at Length
 1957 OK 270, 317 P.2d 265, CITY OF McALESTER v. KING
Discussed
 1958 OK 185, 332 P.2d 677, CITIES SERVICE OIL COMPANY v. MERRITT
Discussed
 1920 OK 351, 193 P. 739, 80 Okla. 3, KENYON v. EDMUNDSON Adm'r.
Discussed at Length
 1921 OK 279, 200 P. 160, 82 Okla. 224, EPPS v. ELLISON
Discussed
 1996 OK 118, 933 P.2d 272, 67 OBJ 3136, Nichols v. Mid Continent Pipe Line Company
Discussed
 2015 OK 73, 362 P.3d 186, McGINNITY v. KIRK
Discussed
 1925 OK 661, 239 P. 582, 112 Okla. 3, CITY OF TECUMSEH v. DEISTER
Discussed
 1998 OK 69, 980 P.2d 99, 69 OBJ 2493, Harrell v. Samson Resources Co.
Discussed
 1985 OK 43, 702 P.2d 33, Briscoe v. Harper Oil Co.
Discussed
 1985 OK 103, 714 P.2d 1017, 56 OBJ 2889, Jackson v. Williams
Discussed
Title 50. Nuisances
 Cite
Name
Level

 50 O.S. 1, Nuisance Defined
Discussed
 50 O.S. 4, Things Done Under Express Authority of Statute not a Nuisance
Discussed