**REGENT INSURANCE COMPANY,**
Plaintiff,

v.

Steve **HOLMES** d/b/a Rainbow International Carpet Dyeing and Cleaning Company; **Nikki Proudfoot, Individually and as Mother and Next Friend of Sierra Evonne Farwell, A Minor; Rainbow International Carpet Dyeing and Cleaning Company; and Worldwide Supply, Inc.,** Defendants.

No. 93–2037 KHV.

United States District Court,
D. Kansas.

Sept. 24, 1993.

**580**

Gregory L. Musil, Shughart, Thomson & Kilroy, Overland Park, KS, Joel R. Mosher, Ralph K. Phalen, Shughart, Thomson & Kilroy, P.C., Kansas City, MO, for plaintiff.

Mark A. Furney, J. Lawrence Louk, Overland Park, KS, for Nikki Proudfoot.

Brian G. Boos, Gregory F. Maher, Jonathan L. Laurans, Niewald, Waldeck & Brown, Overland Park, KS, for Rainbow Intern. Carpet Dyeing and Cleaning Co. and Worldwide Supply, Inc.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

This matter comes before the Court on cross-motions for summary judgment. Plaintiff Regent Insurance Company ("Regent") filed this declaratory judgment action seeking an order declaring that an insurance policy issued to Rainbow International Carpet ("Rainbow") provides no coverage for claims asserted by Nikki Proudfoot, and that it has no duty to defend the insured from such claims. Proudfoot filed her *Motion for Summary Judgment* (Doc. # 16) requesting that the Court deny Regent's prayer for relief. Regent then filed its *Cross–Motion for Summary Judgment Against Defendant Nikki Proudfoot, Individually and as Mother and Next Friend of Sierra Evonne Farwell* (Doc. # 18), asking that the Court enter summary judgment against Proudfoot and in favor of Regent. The Court's jurisdiction arises under 28 U.S.C. § 1332.

### I. Background

The following material facts are undisputed. Regent issued commercial liability policy No. GA 2261814 ("the policy") to Rainbow with an endorsement naming Steve Holmes d/b/a Rainbow International Carpet Dyeing and Cleaning Company ("Holmes") as a named insured. The policy was effective from August 8, 1990, to August 8, 1991. Holmes operated a Rainbow franchise during the term of the policy.

On September 11, 1990, Holmes went to the residence of Nikki Proudfoot for the purpose of dyeing a carpet. Holmes brought with him a bottle of 88% formic acid, which he used to determine whether Proudfoot's carpet was suitable for dyeing.[1] While Holmes and Proudfoot were in another room, Proudfoot's three-year old daughter, Sierra Evonne Farwell, gained control of the bottle and accidently poured the acid on her leg. Sierra was taken by ambulance to and received treatment at the University of Kansas Burn Treatment Unit.

Proudfoot, individually and as mother and next friend of Sierra, filed suit against Holmes, Rainbow, and Worldwide Supply, Inc. ("Worldwide"), the suppliers of the plastic bottle, for damages arising from Sierra's injuries. Holmes sought defense and indemnification under the policy for these claims. Although representing Holmes in that action pursuant to a reservation of rights, Regent brought this action seeking a declaration that it has no obligations under the policy.

---

1. According to Holmes, only wool and nylon carpets can be dyed. Holmes uses the formic acid to test for nylon carpet fibers, which dissolve in formic acid.

Proudfoot and Regent brought cross-motions for summary judgment, to which the Court now turns.

## II. *Discussion*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). In this diversity case, we ascertain and apply Kansas law[2] in an effort to reach the same result that a Kansas court would reach. *See Adams–Arapahoe Sch. Dist. No. 28–J v. GAF Corp.,* 959 F.2d 868, 870 (10th Cir.1992).

Section I of the policy details coverage, with Coverage A insuring for liability arising from bodily injury. Regent concedes that Sierra suffered bodily injury under this aspect of the insuring agreement. Coverage A, however, expressly excludes from coverage any bodily injury "arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants." The policy defines "pollutants" to mean "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." Regent thus contends that the policy expressly and straightforwardly excludes coverage for Sierra's injuries because they arose from the actual release of an acid—a "liquid irritant" specifically identified as a pollutant in the policy. Proudfoot disagrees, contending that the exclusion is ambiguous and that a liberal interpretation of the policy yields coverage for Sierra's injuries.[3]

Our interpretation of the insurance policy is guided by well-settled Kansas law:

2. The parties agree that Kansas law governs the insurance contract underlying this dispute.

3. Proudfoot also contends that (1) the exclusion does not apply because Holmes was not "performing operations" and (2) coverage exists under a separate section for "products-completed operations."

4. In *Titan Holdings Syndicate, Inc. v. City of Keene,* 898 F.2d 265 (1st Cir.1990), the First Circuit, in construing an identical exclusion, not-

To be ambiguous, a contract must contain provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language. Ambiguity in a written contract does not appear until the application of pertinent rules of interpretation to the face of the instrument leaves it generally uncertain which one of the two or more meanings is the proper meaning. The language of a policy of insurance, like any other contract, must, if possible, be construed in such manner as to give effect to the intention of the parties. Where the terms of a policy of insurance are ambiguous or uncertain, conflicting, or susceptible of more than one construction, the construction most favorable to the insured must prevail. Since the insurer prepares its own contracts, it has a duty to make the meaning clear. If the insurer intends to restrict or limit coverage provided in the policy, it must use clear and unambiguous language in doing so; otherwise, the policy will be liberally construed in favor of the insured. When an insurance contract is not ambiguous, the court may not make another contract for the parties. Its function is to enforce the contract as made.

*McIntosh v. Scottsdale Ins. Co.,* 992 F.2d 251, 254 (10th Cir.1993) (quoting *Farm Bureau Mut. Ins. Co. v. Old Hickory Casualty Ins. Co.,* 248 Kan. 657, 810 P.2d 283, 285–86 (1991)).

Applying these rules to the exclusion at hand, the Court concludes that the policy is ambiguous because of its definition of the term "pollutants." The policy defines pollutants as "solid, liquid, gaseous or thermal irritants or contaminants." The policy, however, does not define the terms "irritant" or "contaminant."[4] *Webster's Third New In-*

ed that "the drafter of a policy need not define each word in the policy *ad infinitum,* but may rely on the ordinary meaning of words and on the use of illustrative examples." *Id.* at 269 (emphasis in original). As discussed below, however, the terms irritant and contaminant lack "ordinary" meanings, and illustrative examples cannot cure unclear language.

In addition, *Titan Holdings* did not require a rigorous analysis of the exclusion because the continuous belch of "noxious, fetid and putrid

*ternational Dictionary* (1986) defines an irritant as "something that irritates or excites" and as "an agent by which irritation is produced." *Id.* at 1197. It defines a contaminant as "something that contaminates." *Id.* at 491. These terms admit of no natural or ordinary interpretation, however, because it is unclear whether they refer to substances which ordinarily irritate or contaminate, substances which have in fact irritated or contaminated under these particular circumstances, regardless of their tendency to irritate or contaminate under most circumstances, or both. As Judge O'Connor noted, "[a]ny substance could conceivably be an 'irritant or contaminant' under the right circumstances." *Westchester Fire Ins. Co. v. City of Pittsburg,* 794 F.Supp. 353, 355 (D.Kan.1992), *denying reconsideration of Westchester Fire Ins. Co. v. City of Pittsburg,* 768 F.Supp. 1463, 1470 (D.Kan.1991) (listing hypothetical "irritants"), *aff'd on other grounds, Pennsylvania Nat'l Mut. Casualty Ins. Co. v. City of Pittsburg,* 987 F.2d 1516 (10th Cir.1993); *see also Pipefitters,* 976 F.2d at 1043. Because these defining terms are themselves ambiguous, the policy's definition of "pollutants" simply does not employ the type of clear and precise language necessary to exclude coverage otherwise provided for in the policy, *see Westchester II,* 794 F.Supp. at 355; *see also Catholic Diocese of Dodge City v. Raymer,* 16 Kan.App.2d 488, 825 P.2d 1144, 1148 (1992), and the Court

must construe the ambiguous exclusion in the light most favorable to the insured.

■ Construed in the light most favorable to the insured, the term *pollutant* connotes a substance that is harmful or toxic to persons or the environment generally. *See Westchester II,* 794 F.Supp. at 355. This standard asks whether *this* particular release was harmful or toxic to persons or the environment generally, not whether the release of this particular substance generally is harmful or toxic to persons or the environment.[5]

■ The substance in this case does not satisfy this construction of the pollution exclusion because it was not harmful or toxic to persons or the environment generally. Rather, the spill from a small bottle of formic acid resulted in the severe but discrete injury of one person and inflicted no discernable injury on the environment. Therefore, the formic acid was not a pollutant for which the policy excludes liability.[6] Because the injury in this case did not arise from the release of a "pollutant," the pollution exclusion does not apply and coverage exists under the policy.

**IT IS THEREFORE AND HEREBY ORDERED** that Proudfoot's *Motion for Summary Judgment* (Doc. # 16) be and hereby is **SUSTAINED** and Regent's *Cross-Motion for Summary Judgment* (Doc. # 18) be and hereby is **OVERRULED.** As this order appears to resolve all issues with re-

odors, gases and particulates" from the sewage treatment plant created "no real dispute over whether the emissions [were] irritants or contaminants, just whether they [were] the kind of irritant or contaminant excluded from coverage." *Id.* at 269–70. In other words, the court entertained no doubt that the emissions were pollutants, as the term is commonly understood. *See also Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co.,* 976 F.2d 1037, 1044 (7th Cir.1992) ("one could not characterize the discharge onto land of 80 gallons of PCB–laden oil as anything but pollution"); *Guilford Indus., Inc. v. Liberty Mut. Ins. Co.,* 688 F.Supp. 792, 794 (D.Me.1988) (oil spill from two ten-thousand gallon tanks).

5. Regent thus misses the mark when it argues that the exclusion applied because "88% formic acid is harmful or toxic to all persons if not used correctly."

6. Having found the exclusion ambiguous, it is irrelevant that 88% formic acid might be an "ordinarily irritating" substance or even that the

acid actually irritated the victim in this case. Insurance contracts are considered as a whole. *See Farm Bureau Mut. Ins. Co. v. Horinek,* 233 Kan. 175, 660 P.2d 1374, 1378 (1983). When a policy fails to clearly define an ambiguous term, the drafter bears the burden of any additional confusion caused by the failed attempt. In other words, Regent's ambiguous definition of the already ambiguous term "pollutants" can serve only to limit the meaning of that term, not to expand it.

In this case, Regent further obscured the meaning of "pollutants" by interjecting the concepts of irritants and contaminants. By referring back to the acid's effect as an irritant in this case, Regent seeks to avoid the ordinary meaning of "pollutant." This it may not do. Because the spilled acid was not a pollutant under the policy, however, the Court has no occasion to consider whether or how the terms "irritant" and "contaminant" might further limit that definition.

spect to Regent's duty to indemnify and defend under the policy, the Court further orders that the parties **SHOW CAUSE** in writing within ten days why judgment should not be entered for defendants.