OSCN Found Document:NATIONAL AMERICAN INSUR. CO. v. NEW DOMINION

 

 
 

 
 NATIONAL AMERICAN INSUR. CO. v. NEW DOMINION
2021 OK 62
Case Number: 118490; Comp. w/118496
Decided: 11/23/2021
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2021 OK 62, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

NATIONAL AMERICAN INSURANCE COMPANY, an Oklahoma corporation, Plaintiff/Appellant,
v.
NEW DOMINION, LLC, an Oklahoma, limited liability company, Defendant/Appellee.
APPEALS FROM THE DISTRICT COURT OF LINCOLN COUNTY
Honorable Cindy Ferrell Ashwood, District Judge
Â¶0 National American Insurance Company ("NAICO") brought suit against New Dominion, LLC, seeking declaratory judgment that four consecutive commercial general liability policies it had issued to New Dominion did not provide coverage for bodily injury and property damage claims asserted in a number of separate lawsuits ("the Earthquake Lawsuits"). These claims allegedly arose out of seismic activity caused by New Dominion's oil and gas operations. New Dominion filed a counterclaim alleging breach of contract, seeking defense and indemnity, and asserting equitable claims for estoppel and reformation. The trial court bifurcated the issues pleaded, conducting separate bench trials for the contract interpretation questions and the equitable claims. Following the first bench trial, the court issued a declaratory judgment holding that the Total Pollution Exclusions and the Subsidence and Earth Movement Exclusions in the commercial general liability policies clearly and unambiguously precluded coverage for the claims asserted in the Earthquake Lawsuits. Following the second trial, the court estopped NAICO from denying claims for bodily injury during one of the four policy periods but denied all other equitable claims. Both parties appealed, raising a litany of issues with the trial court's orders. We retained both matters and made them companion cases. We hold that (1) the Total Pollution Exclusions do not clearly and unambiguously preclude coverage; (2) the Subsidence and Earth Movement Exclusions clearly and unambiguously preclude coverage; and (3) there is no basis for New Dominion's estoppel or reformation claims.
MATTER PREVIOUSLY RETAINED FOR DISPOSITION;
TRIAL COURT AFFIRMED IN PART AND REVERSED IN PART;
CAUSE REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS 
OPINION.
Steven K. Metcalf and William H. Spitler, Metcalf & Spitler, Tulsa, Oklahoma, for Plaintiff National American Insurance Company.
Andrew C. Jayne and Jason McVicker, Baum Glass Jayne & Carwile, Tulsa, Oklahoma, for Defendant New Dominion, LLC.
ROWE, J.:
Â¶1 The import of these companion cases is to determine whether NAICO is liable to New Dominion for defense and indemnity under the terms of the commercial general liability policies at issue, and if so, to what extent.
I. BACKGROUND
Â¶2 The present litigation centers around a series of commercial general liability policies and accompanying excess policies, which New Dominion procured from NAICO and which cover four consecutive one-year periods: July 1, 2012, to July 1, 2013 ("Policy Period 1"); July 1, 2013, to July 1, 2014 ("Policy Period 2"); July 1, 2014, to July 1, 2015 ("Policy Period 3"); and July 1, 2015, to July 1, 2016 ("Policy Period 4").
Â¶3 Each of the NAICO Policies contain a series of exclusions that are relevant to the case. The NAICO Policy for Policy Period 1 contains a Total Pollution Exclusion which precludes coverage for bodily injury and property damage "which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time."
[1]
Â¶4 In addition to the Total Pollution Exclusion, the NAICO Policy for Policy Period 1 contains the following Subsidence Exclusion:
This insurance does not apply to "property damage", whether direct or indirect, arising out of, caused by, resulting from, contributed to, or aggravated by the subsidence, settling, expansion, sinking, slipping, falling away, tilting, caving in, shifting, eroding, mud flow, rising or any other movement of land or earth, whether or not any of the foregoing emanate or arise from or are related to the operations of the insured or any other person for whose acts the insured is legally liable.
Â¶5 On May 31, 2013, Kevin Easley, President and CEO of New Dominion, appointed Mark Tedford of Tedford & Associates, LLC, as New Dominion's insurance agent of record. Shortly after becoming New Dominion's insurance agent, Tedford began the process of renewing New Dominion's coverage with NAICO for Policy Period 2. On July 1, 2013, New Dominion renewed its coverage with NAICO for Policy Period 2. The NAICO Policy for Policy Period 2 contained the same Total Pollution Exclusion and Subsidence Exclusion as Policy Period 1.
Â¶6 In the latter part of 2013, New Dominion reached out to Tedford inquiring as to whether it currently had any third-party liability coverage for earthquake-related incidents. In response, on December 16, 2013, Tedford sent an email to Fred Buxton, counsel for New Dominion, containing an article about earthquakes and the oil and gas industry in Oklahoma. The email also contained the following message:
I thought you would be interested in this article. I talked to our AIG Energy rep last week about this very topic. The insurance industry's stance is to litigate hard any claim on this so that they never set a precedence [sic] of acknowledging liability. Your policy (as with most GL policies) has unlimited defense cost benefits so if you did have a claim, you would only be exposed if you lost the lawsuit. Right now, the feeling is that in a legal sense it is impossible to prove that the oil and gas industry is causing these. Even if they could, they could not prove which operator is responsible. Hope this is helpful.
The conversation was dormant for several months after this email.
Â¶7 On June 23, 2014, Buxton again reached out to Tedford via email and requested a copy of any "earthquake insurance" New Dominion had. In his response, Tedford stated, "I don't think there is a specific earthquake coverage [in the commercial general liability policy] but rather if there are allegations that [New Dominion] is liable there is defense cost and if becomes legally liability [sic] for an earthquake there would be coverage." Tedford also indicated that he had prepared a coverage opinion on the issue that he could forward to Buxton. The following day Buxton requested a copy of the coverage opinion, which was not immediately provided.
Â¶8 On July 1, 2014, New Dominion renewed its commercial general liability coverage with NAICO for Policy Period 3. The NAICO Policy for Policy Period 3 contained the same Total Pollution Exclusion as Policy Periods 1 and 2. Policy Period 3, however, contained the following Subsidence and Earth Movement Exclusion:
This insurance does not apply to "property damage", whether direct or indirect, arising out of, caused by, resulting from, contributed to, or aggravated by the subsidence, settling, expansion, sinking, slipping, falling away, tilting, caving in, shifting, eroding, mud flow, rising, earthquake, or any other movement of land or earth, whether or not any of the foregoing emanate or arise from or are related to the operations of the insured or any other person for whose acts the insured is legally liable.
(emphasis added). This version only differs from the Subsidence Exclusions in Policy Periods 1 and 2 in that it includes the term "earthquake" in the list of non-covered events that result in property damage.
Â¶9 On July 7, 2014, Tedford attempted to send a copy of his coverage opinion to Buxton, but Tedford attached the wrong document to the email. Buxton informed Tedford of the mistake, but Tedford did not immediately send over the coverage opinion.
Â¶10 On August 4, 2014, Sandra Ladra filed a lawsuit (the "Ladra Lawsuit") against New Dominion alleging that she was injured as a result of an earthquake in November 2011, which she alleged was caused by New Dominion's use and operation of wastewater injection wells. On August 7, 2014, Buxton forwarded a copy of the petition in the Ladra Lawsuit to Tedford. Tedford then passed the petition along to Dick Harrison, a senior unit claims manager at NAICO, to determine if NAICO would cover the claim. On August 11, 2014, Harrison sent an email to Buxton indicating that NAICO would not provide any coverage for the Ladra Lawsuit because the incidents forming the basis of the claim occurred in November 2011, prior to when New Dominion first obtained coverage through NAICO.
Â¶11 Following the denial, Tedford contacted Harrison via phone with a hypothetical question as to whether NAICO would have provided coverage for the Ladra Lawsuit if it had occurred during a time when New Dominion had coverage with NAICO. Harrison indicated that the NAICO Policies would provide coverage because the Ladra Lawsuit involved claims for bodily injury exclusively, and the Subsidence and Earth Movement Exclusions
[2] included in the policies only applied to claims for property damage.
Â¶12 Tedford finally sent Buxton a copy of the coverage opinion via email on August 18, 2014. The coverage opinion contained the following statements regarding coverage for earthquake-related claims under the NAICO Policies:
In my opinion, the general liability policy will defend and pay for 3rd party [property damage] and [bodily injury] claims for damage caused by earthquake if it is proven that the earthquake was caused by New Dominion's operations. I think the bar is set very high for any third party to prove this and I think the mood of the insurance industry is to vigorously defend these lawsuits as they arise. Because defense cost is unlimited in this policy, I think the coverage is adequate for this exposure.
The coverage opinion did not contain any analysis regarding the potential preclusive effect of the Total Pollution Exclusions or the Subsidence and Earth Movement Exclusions.
Â¶13 On July 1, 2015, New Dominion renewed its commercial general liability coverage with NAICO for Policy Period 4. Policy Period 4 contained the same Total Pollution Exclusion as Policy Periods 1, 2, and 3. Policy Period 4 also contained the following Subsidence and Earth Movement Exclusion:
This insurance does not apply to any loss, injury, or damage whether direct or indirect, arising out of, caused by, resulting from, contributed to, or aggravated by the subsidence, settling, expansion, sinking, slipping, falling away, tilting, caving in, shifting, eroding, mud flow, rising, earthquake, or any other movement of land or earth, whether or not any of the foregoing emanate or arise from or are related to the operations of the insured or any other person for whose acts the insured is legally liable.
(emphasis added). Notably, this version precludes coverage for any loss or injury, whereas the versions from the first three policy periods only applied to property damage.
Â¶14 Beginning in January 2016, New Dominion was sued in a series of separate lawsuits (the "Earthquake Lawsuits"). Each of the Earthquake Lawsuits, in essence, alleges that between 2012 and 2016 New Dominion's oil and gas operations resulted in seismic activity that caused bodily injury to the plaintiffs and/or damage to their property. New Dominion sought defense and indemnity under the NAICO Policies for the Earthquake Lawsuits. NAICO denied coverage, citing the Total Pollution Exclusions and the Subsidence and Earth Movement Exclusions.
Â¶15 On September 16, 2016, NAICO filed a petition in the District Court in and for Lincoln County seeking a declaratory judgment that the NAICO Policies do not provide coverage for the claims asserted in the Earthquake Lawsuits. New Dominion answered with a counterclaim alleging that NAICO's denial amounted to a breach of contract, and an amended answer and counterclaim, adding equitable claims for waiver, estoppel, and reformation based on representations made by Tedford and Harrison that New Dominion had coverage for earthquake-related incidents. The trial court entered an order bifurcating the issues presented in the pleadings for trial; the contract interpretation questions would be resolved first, followed by the equitable claims.
Â¶16 On January 14, 2019, the trial court conducted a bench trial on the contract interpretation issues, specifically whether the claims in the Earthquake Lawsuits were covered under the NAICO Policies. On January 30, 2019, the trial court issued a journal entry of judgment, finding that "none of the NAICO Policies provide coverage for New Dominion with respect to the claims and allegations asserted in the Earthquake Lawsuits." In reaching this conclusion, the trial court determined that the Total Pollution Exclusions, included in all four policy periods, clearly and unambiguously preclude coverage for the type of claims asserted in the Earthquake Lawsuits. The trial court also determined that the Subsidence Exclusions in Policy Periods 1 and 2, as well as the Subsidence and Earth Movement Exclusion in Policy Period 3, clearly and unambiguously preclude coverage for property damage claims. The trial court noted that the parties stipulated to the fact that the Subsidence and Earth Movement Exclusion in Policy Period 4 clearly and unambiguously precludes coverage for all claims asserted in the Earthquake lawsuits.
Â¶17 On September 9, 2019, the trial court conducted a bench trial on New Dominion's equitable counterclaims. Shortly after the trial commenced, New Dominion withdrew all of its waiver claims as well as its estoppel and reformation claims for Policy Periods 1 and 2. Following these withdrawals, the only equitable claims left to be adjudicated were the estoppel and reformation claims for Policy Periods 3 and 4. On November 14, 2019, the trial court entered another journal entry of judgment, which contained the following orders: (1) NAICO is estopped from denying coverage for claims asserted in the Earthquake Lawsuits that arose during Policy Periods 3 and 4, where the denial is based on the Total Pollution Exclusions; (2) NAICO is estopped from denying coverage for bodily injury claims asserted in the Earthquake Lawsuits that arose during Policy Period 3; and (3) New Dominion's claims for reformation of the NAICO Policies for Policy Periods 3 and 4 are denied.
Â¶18 On December 16, 2019, both NAICO and New Dominion filed Petitions in Error. NAICO's Petition in Error contained nineteen issues to be considered on appeal. Generally, NAICO asserts that the trial court erred in finding: (1) that Tedford had actual or apparent authority to bind NAICO to any contractual terms that go beyond or differ from the NAICO Policies for Policy Periods 3 and 4; (2) that any of the statements made by Tedford or Harrison that formed the basis of the estoppel claims qualify as misrepresentations of fact; and (3) that New Dominion could have reasonably relied on those statements to its detriment.
Â¶19 New Dominion's Petition in Error contained fourteen issues to be considered on appeal. New Dominion claims the trial court erred in finding: (1) that the Total Pollution Exclusions in the NAICO Policies clearly and unambiguously precluded coverage for the claims in the Earthquake Lawsuits and (2) that the Subsidence and Earth Movement Exclusions in the NAICO Policies clearly and unambiguously precluded coverage for the claims in the Earthquake Lawsuits. New Dominion also claims that the trial court erred in (1) failing to estop NAICO from denying coverage on the basis of the Subsidence and Earth Movement Exclusions in Policy Periods 3 and 4 and (2) failing to reform the NAICO Policies for Policy Periods 3 and 4.
[3]
II. STANDARD OF REVIEW
Â¶20 The dispute before us presents matters of contract interpretation and equitable relief. The interpretation of an insurance contract and whether it is ambiguous are matters of law for the court to determine and resolve accordingly. Dodson v. St. Paul Ins. Co., 1991 OK 24, Â¶ 12, 812 P.2d 372, 376. We review questions of law under a de novo standard. May v. Mid-Century Ins. Co., 2006 OK 100, Â¶ 22, 151 P.3d 132, 140.
Â¶21 "When reviewing a case at equity, this Court is not bound by the trial court's findings and will consider the whole record and weigh the evidence." Laubenstein v. Bode Tower, L.L.C., 2016 OK 118, Â¶ 9, 392 P.3d 706, 709. The trial court's judgment will be sustained unless it is found to be clearly against the weight of the evidence or contrary to law or established principles of equity. Id. (citing McGinnity v. Kirk, 2015 OK 73, Â¶ 8, 362 P.3d 186, 190). "Whenever the law and facts so warrant, an equity decree may be affirmed if it is sustainable on any rational theory and the ultimate conclusion reached below is legally correct." In re Estate of Vose, 2017 OK 3, Â¶ 10, 390 P.3d 238, 242 (citing Harrell v. Samson Res. Co., 1998 OK 69, Â¶ 31, 980 P.2d 99, 107; Bankoff v. Bd. of Adjustment of Wagoner Cty., 1994 OK 58, Â¶ 17, 875 P.2d 1138, 1143; In re Estate of Bartlett, 1984 OK 9, Â¶ 4, 680 P.2d 369, 374).
III. DISCUSSION
A. Total Pollution Exclusion
Â¶22 New Dominion claims that the trial court erred in its determination that the Total Pollution Exclusion clearly and unambiguously precludes coverage for the Earthquake Lawsuits. We agree.
Â¶23 The Total Pollution Exclusion excludes coverage for bodily injury and property damage "which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time." Pollutants are defined within the policies as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." Waste refers to "materials to be recycled, reconditioned, or reclaimed."
Â¶24 New Dominion maintains on appeal that the Total Pollution Exclusion is ambiguous and asks this Court to apply the reasonable expectations doctrine. The reasonable expectations doctrine states that where an ambiguity in an insurance contract exists, it should be resolved in accordance with the reasonable expectations of the parties. Max True Plastering Co. v. U.S. Fid. & Guar. Co., 1996 OK 28, Â¶ 24, 912 P.2d 861, 870. An insurance contract is ambiguous if it is reasonably susceptible to more than one interpretation. Broom v. Wilson Paving & Excavating, Inc., 2015 OK 19, Â¶ 30, 356 P.3d 617, 628 (quoting Max True Plastering Co., 1996 OK 28, Â¶ 20, 912 P.2d at 869). "We accept the contract language in its plain, ordinary, and popular sense." Id. (quoting Haworth v. Jantzen, 2006 OK 35, Â¶ 17, 172 P.3d 193, 197). If the contract is ambiguous, we must determine whether an insured could have reasonably expected coverage under its terms. Id. Â¶ 31, 356 P.3d at 629. Ambiguous clauses will not be permitted to defeat coverage that was reasonably expected by the insured. Id. "Ambiguities are construed against the insurer and in favor of the insured." Id.[4]
Â¶25 The reasonable expectations doctrine presents two essential questions: (1) whether the language of the Total Pollution Exclusion is ambiguous; and (2) if so, whether New Dominion could have reasonably expected coverage for the events which prompted the present litigation.
Â¶26 New Dominion contends that the ambiguity in the Total Pollution Exclusion stems from the phrase "irritant or contaminant" in the definition of pollutants. New Dominion claims that this language led it to reasonably believe that the exclusion would only apply when the bodily injury or property damage for which coverage is sought arises out of the irritating or contaminating nature of the pollutant. New Dominion contends it did not contemplate that the exclusion would apply in instances where an irritating or contaminating substance, in this case wastewater, caused bodily injury or property damage that was not the result of the wastewater's irritating or contaminating nature.
Â¶27 In order to better illustrate its understanding of the exclusion, New Dominion cites to a number of federal cases. In particular, the United States Court of Appeals for the Seventh Circuit described this supposed ambiguity quite well when analyzing a nearly identical pollution exclusion:
The terms 'irritant' or 'contaminant,' when viewed in isolation are virtually boundless, for 'there is virtually no substance or chemical in existence that would not irritate or damage some person or property.' Without some limiting principle, the pollution exclusion clause would extend far beyond its intended scope, and lead to some absurd results. To take but two simple examples, reading the clause broadly would bar coverage for bodily injuries suffered by one who slips and falls on the spilled contents of a bottle of Drano, and for bodily injury caused by an allergic reaction to chlorine in a public pool. Although Drano and chlorine are both irritants or contaminants that cause, under certain conditions, bodily injury or property damage, one would not ordinarily characterize these events as pollution.
Pipefitters Welfare Educ. v. Westchester Fire Ins. Co., 976 F.2d 1037, 1043 (7th Cir. 1992) (internal citations omitted).
Â¶28 NAICO argues that New Dominion's claims regarding the supposed ambiguity in the Total Pollution Exclusion are unfounded. Specifically, NAICO points to a prior decision of this Court in Bituminous Casualty Corporation v. Cowen Construction, Inc., 2002 OK 34, 55 P.3d 1030. In that case, the insurer brought an action in the United States District Court for the Northern District of Oklahoma seeking declaratory judgment that a nearly identical pollution exclusion precluded coverage for bodily injuries sustained by several patients of a kidney dialysis center that was constructed by the insured. Id. Â¶Â¶ 3-6, 55 P.3d at 1032-33. The District Court certified two questions to this Court, one of which asked whether the scope of the pollution exclusion was limited to environmental pollution in the traditional sense. Id. Â¶ 1, 55 P.3d at 1031-32. We answered that question in the negative. Id. Â¶ 13, 55 P.3d at 1034-35. In reaching that determination, we found that the language of the exclusion was clear and unambiguous. Id. Â¶ 14, 55 P.3d at 1035.
Â¶29 Additionally, NAICO asserts that wastewater, the alleged pollutant in this matter, constitutes "waste," which is one of the specifically enumerated pollutants in the policy. NAICO further argues that the wastewater did irritate and contaminate the land insofar as the wastewater resulted in seismic activity.
Â¶30 We find that the Total Pollution Exclusion is ambiguous, insofar as the phrase "irritant or contaminant" does not clearly encompass the wastewater at issue in this case. A review of the case law clearly reflects that pollution exclusions of this type are reasonably susceptible to more than one interpretation.
[5] Furthermore, we find that our prior decision in Bituminous is distinguishable from the present matter. There, our review was confined to the question of whether such a pollution exclusion was limited in scope to environmental pollution in the traditional sense. Bituminous Cas. Corp., 2002 OK 34, Â¶ 1, 55 P.3d at 1031. We did not consider the ambiguity of the phrase "irritant or contaminant" specifically. Additionally, the parties agreed in that case that the lead qualified as a pollutant within the meaning of the policy. Id. Â¶ 3 n.5, 55 P.3d at 1032 n.5.
Â¶31 NAICO's contention that wastewater constitutes "waste" does not resolve this ambiguity. While wastewater may meet the definition of "waste" set out in the policy, the definition given for pollutants is more exacting. The wastewater must also constitute as "solid, liquid, gaseous or thermal irritant or contaminant." The wastewater does not meet this definition because the harm caused was not the result of the wastewater's irritating or contaminating nature. Rather, the earthquakes and the harm they caused were the result of wastewater being injected back into the ground under highly pressurized conditions. New Dominion makes a compelling point that the substance being injected into the ground could have been something more innocuous, such as fresh, potable water, and the result would have been the same.
Â¶32 Having determined that the Total Pollution Exclusion is ambiguous, we must determine whether New Dominion could have reasonably expected coverage for the Earthquake Lawsuits--irrespective of any other exclusions, such as the Subsidence and Earth Movement Exclusions. Construing the ambiguity in favor of the insured, it was reasonable for New Dominion to have understood the Total Pollution Exclusion as applicable only in instances where bodily injury or property damage resulted from the irritating or contaminating nature of a pollutant.
Â¶33 What the foregoing analysis shows is that the Total Pollution Exclusions were never meant to apply to earthquake-related incidents. They were designed to preclude coverage for a different class of catastrophic occurrences, namely pollution events. NAICO's attempt to shoehorn the earthquake claims that prompted this litigation into the class of events to which the Total Pollution Exclusion logically applies promotes an illogical conclusion. Moreover, this Court will not endorse an absurdly expansive reading of the Total Pollution Exclusions and, in so doing, legitimize a fairly transparent attempt by NAICO to further limit its exposure by invoking inapplicable exclusions to deny coverage.
[6]
Â¶34 Based on the foregoing, we find that New Dominion could have reasonably expected coverage for the Earthquake Lawsuits, despite the presence of the Total Pollution Exclusions in the policies. Accordingly, the trial court's finding that the Total Pollution Exclusions in Policy Periods 1 through 4 clearly and unambiguously preclude coverage is reversed.
B. Subsidence and Earth Movement Exclusions
Â¶35 Unlike the Total Pollution Exclusion, the Subsidence and Earth Movement Exclusions were amended over the years, becoming increasingly exclusive each time. New Dominion has stipulated that the Subsidence and Earth Movement Exclusion in Policy Period 4 precludes coverage for the claims in the Earthquake Lawsuits.
1. Subsidence Exclusions in Policy Periods 1 and 2
Â¶36 The Subsidence Exclusions in Policy Periods 1 and 2 contain the following language:
This insurance does not apply to "property damage", whether direct or indirect, arising out of, caused by, resulting from, contributed to, or aggravated by the subsidence, settling, expansion, sinking, slipping, falling away, tilting, caving in, shifting, eroding, mud flow, rising or any other movement of land or earth, whether or not any of the foregoing emanate or arise from or are related to the operations of the insured or any other person for whose acts the insured is legally liable.
Â¶37 New Dominion again asserts that the Subsidence Exclusion is ambiguous and we should apply the reasonable expectations doctrine. The alleged ambiguity in this instance stems from NAICO's omission of the word "earthquake" from the list of events for which there would be no coverage. New Dominion claims that this ambiguity is highlighted by NAICO's later inclusion of the term "earthquake" in the Subsidence and Earth Movement Exclusions for Policy Periods 3 and 4.
Â¶38 In support of its position, New Dominion cites to a number of relevant principles of contract interpretation we have previously utilized in analyzing insurance agreements. In Broom v. Wilson Paving & Excavating, Inc., 2015 OK 19, 356 P.3d 617, we reviewed an earth movement exclusion similar to the one in this case to determine whether it precluded coverage for earth movement caused by the construction of a trench. We determined that the exclusion was ambiguous on this point and that the insured, a construction company, could have reasonably expected coverage for such an event. Id. Â¶Â¶ 40-41, 356 P.3d at 632. In reaching this conclusion, we reaffirmed the principle that "if an insurer desires to limit its liability under a policy, it must employ language that clearly and distinctly reveals its stated purpose." Id. Â¶ 47, 356 P.3d at 634.
Â¶39 New Dominion also directs our attention to Oklahoma Schools Risk Management Trust v. McAlester Public Schools, 2019 OK 3, 457 P.3d 997, in which we found an earth movement exclusion to be ambiguous, specifically as to whether it precluded coverage for earth movement that was caused by human activity or just earth movement resulting from natural causes. In reaching that determination, we noted that several other similar exclusions within the policy expressly ruled out cause as a limiting factor on their scope. Id. Â¶ 24, 457 P.3d at 1005. "Generally, when an insurer creates specificity in one clause of a policy and then omits in a similar context, the omission is considered purposeful and should be given meaning." Id. (emphasis in original).
Â¶40 For its part, NAICO argues that the provisions in each policy period must stand independently and that we may not consider extrinsic evidence from the other policy periods to ascertain whether the Subsidence Exclusions are ambiguous. NAICO also contends that New Dominion's reliance on Oklahoma Schools Risk Management Trust is misplaced because New Dominion is comparing similar provisions from separate contracts, whereas that case involved similar provisions within the same contract. We agree.
Â¶41 We find that the Subsidence Exclusions in Policy Periods 1 and 2 clearly and unambiguously preclude coverage for the events that form the basis of the Earthquake Lawsuits. While the term "earthquake" is omitted from the list of events for which coverage would be denied, the list comprises nearly every event that is commonly associated with an earthquake. Thus, it would be absurd to find that the Subsidence Exclusions do not contemplate earthquakes as well. Furthermore, it would be inconsistent with our jurisprudence. In Broom and Oklahoma Schools Risk Management Trust, we acknowledged that exclusions of this type "generally refer to and have historically related to catastrophic and extraordinary calamities such as earthquakes and landslides." Okla. Sch. Risk Mgmt. Trust, 2019 OK 3, Â¶ 19, 457 P.3d at 1003 (citing Broom, 2015 OK 19, Â¶ 33, 356 P.3d at 629). We will not adopt a forced and artificially constrained interpretation of the Subsidence Exclusions in order to reach a result favorable to New Dominion. See Broom, 2015 OK 19, Â¶ 30, 356 P.3d at 628. Accordingly, the trial court's finding that the Subsidence Exclusions in Policy Periods 1 and 2 clearly and unambiguously preclude coverage for property damage claims in the Earthquake Lawsuits is affirmed.
2. Subsidence and Earth Movement Exclusion in Policy Period 3
Â¶42 The only change between the Subsidence Exclusions in Policy Periods 1 and 2 and the Subsidence and Earth Movement Exclusion in Policy Period 3 is the inclusion of the term "earthquake" in the list of non-covered events from which property damage might result.
[7] Thus, we need only to decide whether the inclusion of this term injects any ambiguity into an otherwise unambiguous exclusion. Obviously it does not. The inclusion of the term "earthquake" only serves to more explicitly preclude coverage for incidents like those which form the basis of the Earthquake Lawsuits. Accordingly, the trial court's finding that the Subsidence and Earth Movement Exclusion in Policy Period 3 clearly and unambiguously precludes coverage for property damage claims in the Earthquake Lawsuits is affirmed.
C. Estoppel Claims
Â¶43 New Dominion maintains on appeal that NAICO should be estopped from denying coverage for the Earthquake Lawsuits during Policy Periods 3 and 4.
[8] Specifically, New Dominion asserts that it was reasonably led to believe that it would have coverage for earthquake-related incidents under the policies based on Harrison's response to Tedford's hypothetical in the aftermath of the Ladra Lawsuit and Tedford's statements to New Dominion prior to and contained within his coverage opinion. NAICO argues that Tedford lacked the authority to make binding statements on its behalf, that Harrison's statements to Tedford could not form the basis of an estoppel claim because they were not false, and that New Dominion could not have reasonably relied on the statements of either in believing it had coverage for earthquake-related incidents.
Â¶44 "Equitable estoppel is a legal concept which bars a party from alleging or denying certain rights which might otherwise have existed because of the party's voluntary conduct." Sullivan v. Buckhorn Ranch P'ship, 2005 OK 41, Â¶ 30, 119 P.3d 192, 201. It is employed to prevent injustice, not to work any undue benefit to a party. Id. "Estoppel is an affirmative plea which must be proved by the party asserting it." Id. Â¶ 30, 119 P.3d at 202. There are five essential elements to establish equitable estoppel: (1) there must be a false representation or concealment of facts; (2) it must have been made with actual or constructive knowledge of the real facts; (3) the party to whom it was made must have been without knowledge, or the means of discovering the real facts; (4) it must have been made with the intention that it should be acted upon; and (5) the party to whom it was made relied on, or acted upon it to his or her detriment. Id. Â¶ 31, 119 P.3d at 202.[9]
Â¶45 Upon review, we find no basis for granting New Dominion's estoppel claims. While we have considered all of the issues raised on appeal, we limit our analysis to those points on which the estoppel claims most obviously fail.
[10]
1. New Dominion did not act upon the representations of Harrison or Tedford in renewing its commercial general liability policy for Policy Period 3.
Â¶46 As to Harrison, New Dominion claims the allegedly false statement occurred during his August 11, 2014 phone call with Tedford regarding coverage for the Ladra Lawsuit, during which Harrison indicated that there likely would be coverage if the claim had occurred during one of the NAICO policy periods. As to Tedford, New Dominion identifies three exchanges. The first was the December 16, 2013 email that Tedford sent Buxton, which contained an article about earthquakes and the oil and gas industry in Oklahoma. Therein, Tedford stated, "Your policy (as with most GL policies) has unlimited defense cost benefits so if you did have a claim, you would only be exposed if you lost the lawsuit." On June 23, 2014, Tedford sent Buxton another email in response to Buxton's request for a copy of any earthquake insurance New Dominion had at the time. In that message, Tedford offered the following assessment: "I don't think there is a specific earthquake coverage [in the commercial general liability policy] but rather if there are allegations that [New Dominion] is liable there is defense cost and if becomes legally liability [sic] for an earthquake there would be coverage." Finally, on August 18, 2014, Tedford sent Buxton a coverage opinion, which contained the following conclusions:
In my opinion, the general liability policy will defend and pay for 3rd party [property damage] and [bodily injury] claims for damage caused by earthquake if it is proven that the earthquake was caused by New Dominion's operations. I think the bar is set very high for any third party to prove this and I think the mood of the insurance industry is to vigorously defend these lawsuits as they arise. Because defense cost is unlimited in this policy, I think the coverage is adequate for this exposure. 
Â¶47 New Dominion renewed its commercial general liability policy for Policy Period 3 on July 1, 2014. Harrison's August 11, 2014 phone call with Tedford, in which Harrison addressed the hypothetical about the Ladra Lawsuit, occurred more than one month after the renewal of Policy Period 3 and did not occur in connection with the application or renewal. Likewise, Tedford did not provide Buxton with a copy of his coverage opinion until August 18, 2014, also more than one month after the renewal of Policy Period 3. Thus, the only statements on which New Dominion could have relied prior to renewing for Policy Period 3 were those in the December 16, 2013 and June 23, 2014 emails from Tedford. The record reflects, however, that New Dominion did not rely on these relatively indefinite representations from Tedford. Rather, New Dominion, and Buxton in particular, were not sufficiently assured that the policies provided coverage for earthquake-related incidents, given their continued requests that a formal coverage opinion be provided. Even so, New Dominion ultimately renewed for Policy Period 3 without receiving any definitive answers from either Tedford or NAICO on the question of earthquake coverage prior to renewal. We are unpersuaded that New Dominion reasonably relied on Harrison's or Tedford's representations as to coverage, nor that New Dominion continued to keep NAICO as its commercial general liability insurer based on those representations.
2. The estoppel claim for Policy Period 4 also fails because New Dominion had constructive knowledge that any claims arising out of earthquake-related incidents would be excluded under the Subsidence and Earth Movement Exclusion.
Â¶48 New Dominion concedes that the Subsidence and Earth Movement Exclusion in Policy Period 4 clearly and unambiguously precludes coverage for the claims asserted in the Earthquake Lawsuits. Since New Dominion and its representatives had access to the terms of commercial general liability policy for Policy Period 4 and the capacity to understand their effect, they can be charged with constructive knowledge of any terms that contradict statements Tedford or Harrison might have made. Had New Dominion taken the time to review the policy prior to executing its renewal, it would have recognized that the Subsidence and Earth Movement Exclusion precluded coverage for earthquake-related incidents.[11]
3. Conclusions on Estoppel
Â¶49 The trial court determined (1) that NAICO should be estopped from denying coverage for claims asserted in the Earthquake Lawsuits that arose during Policy Periods 3 and 4, where the denial is based on the Total Pollution Exclusions; and (2) that NAICO should be estopped from denying coverage for bodily injury claims asserted in the Earthquake Lawsuits that arose during Policy Period 3.[12] As noted above, New Dominion's estoppel claims for Policy Periods 3 and 4 fail for different reasons, respectively. Thus, we find that the trial court's holdings on New Dominion's estoppel claims are clearly contrary to the weight of the evidence and not sustainable on any rational theory. See Laubenstein, 2016 OK 118, Â¶ 9, 392 P.3d at 709; In re Estate of Vose, 2017 OK 3, Â¶ 10, 390 P.3d at 242.
D. Reformation
Â¶50 New Dominion seeks reformation of the commercial general liability policies for Policy Periods 3 and 4, such that they afford coverage for the claims asserted in the Earthquake Lawsuits.
[Reformation] requires a plaintiff to show (a) some antecedent agreement to the terms of which the instrument should be reformed, (b) mutual mistake or mistake on part of one and fraud or inequitable conduct on the part of the other, as a result of which the instrument reflects something neither party had intended and (c) proof of these elements by clear and convincing evidence.
Cleary Petroleum Corp. v. Harrison, 1980 OK 188, Â¶ 11, 621 P.2d 528, 533. In this instance, New Dominion must show by clear and convincing evidence that there was an antecedent agreement with NAICO to provide coverage for earthquake-related incidents and that by virtue of fraud or mutual mistake, the commercial general liability policies for Policy Periods 3 and 4 failed to reflect that agreement.
Â¶51 We find no evidence in the record of an antecedent agreement between New Dominion and NAICO that would afford New Dominion coverage for earthquake-related incidents. New Dominion claims this elusive agreement is reflected in the same statements that form the basis of its estoppel claims, specifically Tedford's emails from December 16, 2013, and June 23 2014, the phone call between Tedford and Harrison on August 11, 2014, and the coverage opinion Tedford sent to New Dominion on August 18, 2014. These communications, however, provide no evidence of an alleged antecedent agreement between the parties. Rather, they all were prompted by and pertain to questions of whether policies already in effect afforded the coverage New Dominion was seeking.
Â¶52 In reviewing the record, it is clear that NAICO never intended to afford New Dominion coverage for earthquake-related incidents and certainly never agreed to do so. That intent is best reflected in the inclusions of the Subsidence Exclusions in Policy Periods 1 and 2, which as discussed above, clearly and unambiguously preclude coverage for property damage stemming from earthquake-related incidents. Nothing that occurred during the interim, including the aforementioned communications, demonstrates a change in NAICO's intent.
Â¶53 New Dominion has also failed to show clear and convincing evidence of fraud or mutual mistake, which resulted in the omission of the allegedly agreed upon coverage from the commercial general liability policies for Policy Periods 3 and 4. New Dominion does not identify any conduct on NAICO's part that could be considered fraudulent. Small modifications to existing exclusions during the renewal of an insurance policy does not amount to fraud. Likewise, there is no evidence of mutual mistake. As mentioned above, NAICO's intent from the beginning was to preclude coverage for earthquake-related incidents. The exclusions in Policy Periods 3 and 4 are consistent with and reflect that intent. Thus, it cannot be said that the policies did not reflect what either party intended. Accordingly, the trial court's denial of New Dominion's reformation claims is affirmed.
IV. CONCLUSION
Â¶54 We find that the Total Pollution Exclusions are ambiguous insofar as the phrase "irritant or contaminant" is reasonably susceptible to more than one interpretation. The trial court's finding to the contrary is reversed. The trial court's finding that the Subsidence and Earth Movement Exclusions in all four policy periods clearly and unambiguously preclude coverage for the Earthquake Lawsuits is affirmed. As for New Dominion's claims for estoppel and reformation claims, we find no basis for either. The trial court's finding that NAICO should be estopped from denying coverage for claims asserted in the Earthquake Lawsuits that arose during Policy Periods 3 and 4, where the denial is based on the Total Pollution Exclusions, and its finding that NAICO should be estopped from denying coverage for bodily injury claims asserted in the Earthquake Lawsuits that arose during Policy Period 3, are both hereby reversed. The trial court's denial of New Dominion's reformation claims for Policy Periods 3 and 4 is affirmed. These causes are remanded to the trial court for proceedings consistent with this opinion.
MATTER PREVIOUSLY RETAINED FOR DISPOSITION;
TRIAL COURT AFFIRMED IN PART AND REVERSED IN PART;
CAUSE REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS 
OPINION.
Darby, C.J., Kane, V.C.J., Kauger, Winchester, Gurich, Rowe, Kuehn, JJ., concur.
Edmondson, Combs, JJ., concur in part, dissent in part.
FOOTNOTES
[1] Pollutants are defined as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." Waste is defined as "materials to be recycled, reconditioned, or reclaimed."
[2] "Subsidence and Earth Movement Exclusions" refers collectively to the Subsidence Exclusions in Policy Periods 1 and 2, as well as the Subsidence and Earth Movement Exclusion in Policy Period 3. When referencing the exclusions collectively, we refer to them as the Subsidence and Earth Movement Exclusions.
[3] New Dominion's Petition in Error also claims that the trial court erred in failing to estop NAICO for denying coverage for claims in the Earthquake Lawsuits that arose during Policy Period 2. However, based on the trial court's order, New Dominion waived any estoppel claims with respect to Policy Period 2. New Dominion has not presented any evidence to the contrary. Accordingly, these arguments will not be considered on appeal.
[4] We construe ambiguities in an insurance contract in favor of the insured because insurance contracts are contracts of adhesion. Spears v. Shelter Mut. Ins. Co., 2003 OK 66, Â¶ 5, 73 P.3d 865, 868.
[5] Broom v. Wilson Paving & Excavating, Inc., 2015 OK 19, Â¶ 30, 356 P.3d 617, 628; see, e.g., Reg'l Bank of Colo., N.A. v. St. Paul Fire & Marine Ins. Co., 35 F.3d 494 (10th Cir. 1994); Pipefitters Welfare Educ. v. Westchester Fire Ins. Co., 976 F.2d 1037, 1043 (7th Cir. 1992); Regent Ins. Co. v. Holmes, 835 F.Supp. 579, 582 (D. Kansas 1993).
[6] Here, we note that the Total Pollution Exclusions preclude coverage for a class of harm, namely bodily injury, which the first three Subsidence and Earth Movement Exclusions, the exclusions more obviously directed at earthquakes, fail to address.
[7] The Subsidence and Earth Movement Exclusion for Policy Period 3 states:
This insurance does not apply to "property damage", whether direct or indirect, arising out of, caused by, resulting from, contributed to, or aggravated by the subsidence, settling, expansion, sinking, slipping, falling away, tilting, caving in, shifting, eroding, mud flow, rising, earthquake, or any other movement of land or earth, whether or not any of the foregoing emanate or arise from or are related to the operations of the insured or any other person for whose acts the insured is legally liable.
(emphasis added).
[8] We note that New Dominion's Petition in Error appears to raise estoppel claims for Policy Period 2 as well. However, as noted in the trial court's November 14, 2019 journal entry, New Dominion withdrew these claims at the commencement of trial. See supra note 3.
[9] We note at the outset that the trial court's November 14, 2019 Journal Entry contains few, if any, factual findings relevant to the estoppel claims. However, since we only review the trial court's judgment to determine if there is any rational basis on which it could be sustained, we can proceed without definitive findings of fact. See In re Estate of Vose, 2017 OK 3, Â¶ 10, 390 P.3d 238, 242.
[10] In reviewing the estoppel claims, we also considered NAICO's arguments on agency as to whether Tedford had actual or apparent authority to speak on its behalf. However, we do not address them here because the claims fail on other grounds.
[11] We note here that the same analysis would apply to the estoppel claim for Policy Period 3 with respect to property damage claims.
[12] In effect, both of the trial court's findings on the estoppel claims are one and the same. To estop NAICO from denying coverage in Policy Periods 3 and 4 based on the Total Pollution Exclusions is to estop NAICO from denying coverage for bodily injury claims during Policy Period 3. This is so because in Policy Period 4, bodily injury claims are otherwise precluded under the Subsidence and Earth Movement Exclusion, whereas in Policy Period 3, bodily injury claims were only precluded under the Total Pollution Exclusion.
We also note that the trial court's findings on the estoppel claim are subsumed by our prior finding that the Total Pollution Exclusions are ambiguous.